PEOPLE v POTTS

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—SAME
   TRANSACTION.

   A defendant's prosecution for forgery and uttering and publishing
   was not barred by the double jeopardy provisions of the State
   and Federal Constitutions because of an earlier conviction of
   conspiracy to utter and publish allegedly arising from the same
   criminal transaction where the acts which formed the basis for
   the first conviction were separated by a period of three days
   from the act upon which the latter prosecution was based;
   similarities in evidence presented at both trials arose because
   the defendant employed the same *modus operandi* in present-
   ing forged checks for payment but the fact remained that
   defendant's criminal actions on the two occasions represented
   two coalescences of intent and action (US Const, Am V; Const
   1963, art 1, § 15).

2. CRIMINAL LAW—SPEEDY TRIAL—CONSTITUTIONAL LAW.

   A defendant was not denied his constitutional right to a speedy
   trial where the delay was 16 months, the reason for the delay
   was that the preliminary examination transcript was lost and
   that defendant's attorney withdrew, there was no demand for a
   speedy trial, and defendant failed to show where he was preju-
   diced by the delay.

3. CRIMINAL LAW—PRISON INMATES—UNTRIED CHARGES—180-DAY
   RULE—STATUTES.

   The statute providing that prosecution against a prison inmate be
   commenced within 180 days from a Department of Corrections
   request for final disposition of a warrant, indictment, informa-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 165 *et seq.*
[2, 3] 21 Am Jur 2d, Criminal Law §§ 241–246.
[4] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[5] 21 Am Jur 2d, Criminal Law §§ 334, 341.
[6] 21 Am Jur 2d, Criminal Law §§ 136, 137.
[7–9] 21 Am Jur 2d, Criminal Law § 303.
[10] 21 Am Jur 2d, Criminal Law §§ 409, 416, 427, 432.
[11] 21 Am Jur 2d, Criminal Law §§ 533, 545, 606.

tion or complaint required only that good-faith action be taken well within that period and such good-faith action was taken where a defendant's incarceration upon his first conviction began on June 10 and a second preliminary examination, necessitated by the loss of the first examination transcript, was held on November 12 (MCLA 780.133).

4. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PHOTOGRAPHIC SHOWUP—EXCLUSIONARY RULE.

A defendant who was not a party suspected of committing the crime for which he was tried at the time a photographic identification was made was not entitled to have such identification evidence excluded at trial.

5. CRIMINAL LAW—IN-COURT IDENTIFICATION—INDEPENDENT SOURCE.

The in-court identification of a defendant was independent of a presumably tainted identification procedure where the witness had viewed the defendant charged with forgery and uttering and publishing for approximately ten minutes at the time of commission of the crime, was able to describe in detail a conversation between defendant and herself and the circumstances of defendant's cashing the check, watched defendant leave the store and join others in a car, and upon hearing that the check was bad had volunteered that she would be able to identify the person who cashed the check.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—ALIBI DEFENSE.

An instruction to the jury regarding the defendant's alibi defense which allegedly shifted the burden of proving the alibi to defendant did not amount to reversible error where an examination of the instructions as a whole revealed the trial court elaborated at length on the presumption of innocence in favor of the accused and the people's burden of proving beyond a reasonable doubt every element of the crime, and where the defendant failed to object to the instruction at trial.

7. CRIMINAL LAW—PRESENTENCE REPORT—REQUEST FOR UPDATING.

The trial court did not err by failing to order an updated presentence report in spite of defendant's request where the most recent of the reports used by the trial court was prepared 7-1/2 months before the defendant was sentenced and the defendant had spent the interim incarcerated either in the county jail or Jackson Prison.

8. CRIMINAL LAW—PRESENTENCE REPORT—MANDATORY ACCESSIBILITY.

The Michigan Supreme Court has addressed itself to the issue of mandatory accessibility of presentence reports but has failed to

resolve it; it would therefore be inappropriate for the Court of Appeals to outrun the Supreme Court and resolve the issue.

9. Criminal Law — Sentence — Presentence Report — Pending Charges — Improper Basis — Discretion.

The trial court did not abuse its discretion in sentencing a defendant after viewing a presentence report which contained information concerning pending charges against the defendant where the trial judge stated, at a later hearing on a motion to view the report, that this information did not influence defendant's sentence, and where there was no reference to the pending charges at sentencing.

10. Criminal Law—Judges—Assignment of Judges—Prejudice.

A defendant was not prejudiced by the practice of the circuit court of routinely assigning criminal charges pending against a defendant to the same judge who had been randomly assigned the first case against a defendant where the first case assigned to the trial judge was the case appealed, since the practice clearly did not influence the court's conduct of the trial.

11. Criminal Law—Sentence—Credit for Time Served—Statutes.

A defendant who was arrested and released on bond but who was subsequently jailed on another charge for which he could not post bond was entitled to credit for time served upon sentencing for the first offense charged even though the time served did not result directly from the charge for which he was convicted because the credit-granting statute has been so construed to effectuate its purpose (MCLA 769.11b).

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 February 7, 1973, at Grand Rapids. (Docket No. 13717.) Decided April 25, 1973. Leave to appeal applied for.

Norah Potts, Jr., was convicted of forgery and uttering and publishing. Defendant appeals. Affirmed with sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Prosecuting Attorney, for the people.

*David Goldstein,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

DANHOF, P. J. Defendant was tried by a jury and convicted of forgery, MCLA 750.248; MSA 28.445, and uttering and publishing, MCLA 750.249; MSA 28.446. He was sentenced to serve from 7-1/2 to 14 years in prison.

The testimony of complaining witness, Arlene Bastien, indicated that in the afternoon of September 5, 1970, she cashed a check for $40 for defendant at the D & W Supermarket in Wyoming, Michigan. She specifically recalled observing defendant for a period of approximately ten minutes at the time of the cashing. She also recalled recording his identification as "Glenn Bowles" from Social Security and Blue Cross-Blue Shield cards presented by defendant and watched defendant as he endorsed the subject check "Glenn Bowles" in her presence. At the time defendant was wearing a uniform with the name "Glenn T. Bowles" embroidered on it.

Robert Pope, an employee of the Nye Uniform Company, testified that defendant and another party purchased a shirt and ordered the name "Glenn T. Bowles" placed on the shirt. The check which defendant cashed was drawn to the account of the O.K. Tire Production Company. The company's account was closed and neither defendant nor a "Glenn T. Bowles" were authorized to draw on the account. Sometime in 1969 the office of the company was entered and some checks to the closed account were taken. Glenn T. Bowles testified that on August 29, 1970 his Blue Cross-Blue Shield card and his Social Security card were

taken with other items from his person while he was at the Greyhound bus station. Defense witness LaVon Anderson gave testimony indicating that defendant and his wife spent the afternoon and early evening of September 5, 1970 with him in Muskegon.

From his conviction defendant brings the present appeal. He raises a total of 12 assignments of error for our consideration, all of which have been given careful scrutiny. We will, however, confine our discussion to 8 of these issues. The rest have either not been preserved for appeal because of defendant's failure to object at trial, or lack sufficient substance to merit our discussion.

## I

Defendant contends that his conviction should be reversed because his arrest without a warrant was not based on probable cause. Defendant challenged the validity of the same arrest in another case before this Court. *People v Potts,* 44 Mich App 722 (1973). We are in complete agreement with this Court's determination in that case that defendant's arrest was lawful and that the search of his car was proper.

## II

Defendant complains that he was unconstitutionally placed twice in jeopardy when he was brought to trial on charges of forgery and uttering and publishing arising from the same check-passing transaction as the charge of conspiracy to utter and publish on which he had earlier been convicted. He argues that the crimes charged in the first and second trials are part of the same criminal transaction because at all times he acted

with the same intent to defraud the O.K. Tire Production Company. Defendant was initially convicted of conspiracy to utter and publish forged checks contrary to MCLA 750.157a; MSA 28.354(1). Testimony at the first trial related principally to defendant's and his accomplices' acts in presenting forged checks for payments at the Shop-Rite and Meijer's stores in Grand Rapids on September 8, 1970. No determination was made that defendant uttered and published a forged check at the D & W Supermarket on September 5, 1970. The latter was the act, together with the forgery, which was the basis of his conviction at the second trial.

We are aware of the two conflicting views of this Court regarding the test which should determine whether a citizen has been twice put in jeopardy contrary to both the State and Federal Constitutions. Const 1963, art 1, § 15; US Const, Am V. We are, however, of the opinion that, under either the collateral estoppel test applied in *People v Noth,* 33 Mich App 18 (1971), or the same transaction test applied in *People v White,* 41 Mich App 370 (1972), *leave to appeal granted,* 388 Mich 780 (1972), defendant has not been placed twice in jeopardy. The gravamen of the offense of conspiracy is the agreement to commit an illegal act. Conviction of that offense may follow from evidence of an unlawful agreement although evidence also shows the completion of the illegal act. *People v Newsome,* 3 Mich App 541 (1966); *People v Norwood,* 312 Mich 266, 271 (1945). Moreover, in the instant case defendant's codefendants at the first trial were not connected with the unlawful acts committed at the D & W Supermarket on September 5, 1970.

Even assuming the validity of the same transaction test, which a recent pronouncement of our

Supreme Court leaves in doubt, *People v Grim-mett,* 388 Mich 590, 607 (1972), it would be danger-ous in our estimation to define acts separated by a period of three days as being part of the same transaction. Both *Noth, supra,* and *White, supra,* involved acts closely proximate in time. Such is not the case here. In the first trial the jury's finding that there was an illegal agreement was based upon proof of acts having occurred on September 8, 1970. The similarities in evidence presented at both trials arose from the fact that defendant employed the same *modus operandi* in presenting forged checks for payment. The fact remains, however, that his criminal actions on September 5 and September 8 represent two coalescences of intent and action.

## III

Defendant alleges that he was denied his right to a speedy trial on constitutional grounds and on statutory grounds. The United States Supreme Court recently enunciated the test by which we are to determine whether a defendant's rights to a speedy trial have been violated. *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). The factors to be balanced in making the determination are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. 407 US 514, 530; 92 S Ct 2182, 2192; 33 L Ed 2d 101, 117. The delay between defendant's arrest and his trial was approximately 16 months. The reason for the delay was that the preliminary examination transcript was lost and that defendant's attorney withdrew. Defendant made no demand for a speedy trial, although this is not fatal to his claim. A review of the trial testimony indicates that witnesses for the

prosecution identified defendant with certainty and were able to substantially describe their contact with him. Further, defendant has failed to show where he was prejudiced by the delay. Thus, there was no violation of defendant's constitutional right to a speedy trial.

Defendant's complaint that he was not brought to trial within the 180-day period required by MCLA 780.133; MSA 28.969(3) is without merit. Our courts have uniformly held that the statutory language "brought to trial" requires only that "good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial * * * ". *People v Hendershot,* 357 Mich 300, 304 (1959); *People v Downing,* 31 Mich App 31 (1971). Defendant's incarceration upon his first conviction began on June 10, 1971. The second preliminary examination, necessitated by the loss of the first examination transcript, was held on November 12, 1971. Good-faith action was taken in the instant case.

## IV

Defendant contends that he is entitled to a reversal because the pretrial and in-court identifications were erroneously admitted into evidence. However, defendant was not a party suspected of committing the instant crime at the time the photographic identification was made. Therefore, the exclusionary rule of *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) does not apply. *Kirby v Illinois,* 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972); *People v Pinette,* 42 Mich App 250 (1972).

Even assuming the validity of the photographic identification in defendant's favor, the question is

whether the in-court identification of defendant by the witness had a source independent of the presumably tainted identification procedure. The evidence indicates that the witness, Bastien, viewed the defendant for approximately ten minutes on September 5, 1970 at the supermarket. She was able to describe in detail a conversation between defendant and herself. She described the circumstances of defendant's cashing the check. She testified as to watching him leave the store and join others in a car. When she heard the check was bad, she volunteered that she would be able to identify the person who cashed the check. On these facts, the trial court held that the identification of defendant was independent of the photographic identification. We agree.

## V

Defendant alleges that the trial court erroneously charged the jury on the law of alibi by affirmatively shifting the burden of proving the alibi to defendant instead of instructing the jury that an alibi raising a reasonable doubt entitled defendant to an acquittal. The instruction given by the trial court on alibi reads as follows:

"Now there has been some evidence in this case about an alibi; and an alibi in certain cases is a good defense. It means that a person can't be in a position to have committed the crime. It is the claim of the defendant in this case that he was not in a position to have committed this crime on Saturday afternoon, September 5, 1970, because at that time he was in Muskegon. That is what we call an alibi defense and therefore he couldn't be in two places at the same time and therefore he claims he is not guilty of this offense.

"Now, in the consideration of this kind of a defense, it is necessary for the jury to take into consideration all

of the facts of the case and it is your duty as jurors to examine carefully the evidence on that point of alibi. You must scrutinize the evidence in relation to the alibi. An alibi is such a defense that it is easily proven and it is very difficult to disprove. Therefore you must be very careful and cautious in examining the evidence bearing on this question of alibi. Of course, if you find, believe the alibi witness, that Mr. Potts was in Muskegon all day on September 5, then that is an absolute defense and he would be not guilty of the offense charged. But as I have said to you, an alibi defense bears scrutiny and must be examined very carefully by a jury because it is easy to prove and hard to disprove."

A similar instruction was found to be deficient in *People v Virgil Brown,* 15 Mich App 600, 605 (1969). However, there just as in the instant case, the absence of an objection at trial precluded review. Moreover, an examination of the instructions as a whole reveals that the trial court elaborated at length on the presumption of innocence in favor of the accused and the people's burden of proving beyond a reasonable doubt each and every element of the crime. Reading the instructions in their entirety, and noting the absence of an objection by the defendant, we find no reversible error.

## VI

Defendant raises several allegations of error in regard to his sentencing. First he claims error in that the trial court failed to order an updated presentence report in spite of defendant's request. In *People v Malkowski,* 385 Mich 244, 249 (1971), the Supreme Court underscored the need for accurate information at sentencing. The most recent of the presentence reports used by the trial court was prepared 7-1/2 months before the defendant was sentenced. In the interim, defendant was incarcer-

ated either in the county jail or Jackson Prison. We are of the opinion that, under the circumstances, updating would have been a mere formality.

Defendant contends that the trial court erred in failing to disclose the presentence report to defense counsel and that the court may have relied on information contained in the report concerning charges pending against the defendant at the time of his sentencing. Although defendant's counsel at sentencing did not make a request to view the presentence report, defendant's appellate counsel did make such a motion. A hearing was held in which the trial judge did indicate that he was aware of other charges pending against the defendant on the date of sentencing and that information on these charges was included in the presentence report. However, he was explicit in his statement that this information did not influence defendant's sentence. At the conclusion of the hearing, defendant's motion for a production of the report was denied. We are of the opinion that this was not an abuse of discretion. A hearing was held and disclosure made. Since defendant's trial counsel did not request production of the report, the case is factually different from *People v Malkowski, supra.* Moreover, although the Supreme Court in *Malkowski* addressed itself to the issue of mandatory accessibility of these reports, it failed to resolve it. We agree with this Court's observation in *People v Griffis,* 37 Mich App 249, 251 (1971), that it would be inappropriate for us to "outrun the Supreme Court".

We are satisfied that the trial court was not influenced by information regarding pending charges in determining defendant's sentence. There was no reference to these charges at sen-

tencing. We are referred to the case of *People v Zachery Davis,* 41 Mich App 683, 686 (1972). The situation there was drastically different. In that case, the court made repeated references to pending charges and, in spite of defendant's protestations of innocence, these charges, together with the fact that defendant felt no remorse for the allegations contained therein, were clearly taken into account when the defendant was sentenced. Such was not the case here.

Defendant claims that he was prejudiced by the practice in the Kent County Circuit Court of routinely assigning criminal charges pending against a defendant to the same judge who has been randomly assigned the first case against a defendant. Defendant claims this to be contra to GCR 1963, 925.5(1). However, because the first case assigned to the trial judge was the instant case, this practice clearly did not influence the court's conduct of trial. We have already determined that the trial court's knowledge of charges pending against defendant did not influence the defendant's sentence. We see, therefore, no error which would require resentencing.

## VII

Defendant contends that the statutory scheme as set forth in MCLA 750.248; MSA 28.445, MCLA 750.251; MSA 28.448, and MCLA 750.253; MSA 28.450 establishes widely divergent punishment for similar conduct without a rational basis in violation of the equal protection clause of the State and Federal Constitutions. This question has been decided to the contrary in *People v Brooks,* 43 Mich App 715 (1972).

VIII

Defendant meritoriously claims that he was denied credit on his sentence for the 307 days prior to sentencing during which he was not free on bond. Defendant was arrested on the charges herein appealed on September 18, 1970 and was released on bond. On March 24, 1971 this bond was revoked and defendant was incarcerated in the Kent County jail. On June 10, 1971 defendant was sentenced on another charge and entered the state prison at Jackson, Michigan on July 31, 1971 to serve that sentence. The jury verdict in the instant case was received on January 25, 1972 and defendant was sentenced on that date to serve from 7-1/2 to 14 years in prison on his conviction. MCLA 769.11b; MSA 28.1083(2) reads as follows:

"Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing."

The people contend that the statute does not apply because defendant's incarceration on March 24, 1971 was a result of a charge initiated by the Kent County Grand Jury for sale of heroin. At that time, defendant was unable to post bond on that charge, although technically he was still free on bond for purposes of the instant case as well as another charge. It is further argued that in the case at bar the trial judge had an obligation only to credit defendant for time served resulting directly from the charge for which he was then convicted. We find such reasoning, although con-

forming to the letter of the statute, not in accordance with the construction given the statute in order to effectuate its purpose. *People v Chattaway,* 18 Mich App 538 (1969); *People v Hall,* 19 Mich App 95 (1969). Compare *People v Pruitt,* 23 Mich App 510 (1970), whose holding was limited to the application of the credit-granting statute to a sentence imposed for prison escape.

Defendant is entitled to credit against his sentences for forgery and uttering and publishing for 307 days. There is no need to remand for resentencing. Pursuant to GCR 1963, 820.1(7), it is ordered that defendant's sentences be amended specifically to grant him credit for the 307-day period.

Affirmed except as otherwise modified herein.

All concurred.