PEOPLE v DUKE

1. Criminal Law—Evidence—Other Crimes—Rebuttal Testimony —Discretion.

Admission of rebuttal testimony of a police witness which showed that defendant allegedly committed another crime was not an abuse of discretion where the testimony was not introduced for the improper purpose of showing that the defendant committed the crime charged, but rather was introduced for the purpose of directly rebutting defendant's testimony with respect to the events surrounding his arrest.

2. Criminal Law—Prosecutor's Remarks—Fair Trial—Preserving Question.

The conduct of a prosecutor in allegedly making allusion by innuendo to sexual impropriety between a defense witness and a defendant did not result in reversible error where a careful reading of the transcript coupled with defendant's lack of objection indicates that the prosecutor's questions did not interfere with defendant's having a fair trial or cause the jury to suspend its own power of judgment in hearing the evidence adduced at trial.

3. Criminal Law—Closing Argument—Reasonable Inferences— Fair Trial—Preserving Question.

Portions of a prosecutor's closing argument were not so improper and prejudicial as to deny defendant his constitutional right to a fair trial where the prosecutor attempted to establish a relationship between his theory of the case and the facts in evidence because a prosecutor is entitled to comment on the evidence and draw reasonable inferences therefrom; and where the defendant made no objection at the time the allegedly

---

References for Points in Headnotes
[1] 29 Am Jur 2d, Evidence §§ 250, 269.
[2, 3] 53 Am Jur, Trial § 495.
[4] 53 Am Jur, Trial § 904.
[5–7] 29 Am Jur 2d, Evidence §§ 485, 785.
   Admissibility of evidence of photograph identification as affected by allegedly suggestive identification procedure, 39 ALR3d 1000.

offensive statements were made and made no request for curative or corrective instructions, any error was waived.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—REQUESTS BY JURY—QUESTIONS OF FACT.

A request by a jury sent to the trial judge during their deliberations in a criminal case which framed the question "Is there evidence * * * " was correctly denied because had the trial judge responded to the request he clearly would have infringed on the undisputed right of the jury to resolve controverted questions of fact.

5. CRIMINAL LAW—EYEWITNESS IDENTIFICATION—PHOTOGRAPHS—COURTS—PROSPECTIVE APPLICATION.

The rule recently enunciated by the Supreme Court that, subject to certain exceptions, identification by photograph of a criminal suspect should not be used where the accused is in custody, is to be prospectively applied.

6. CRIMINAL LAW—IN-COURT IDENTIFICATION—PHOTOGRAPHIC IDENTIFICATION—INDEPENDENT SOURCE.

An in-court identification of a defendant was permissible as independent of a presumably tainted photographic identification procedure where the basis for positive corporeal identification existed before the photographs were shown to the complainant because the complainant had given police a detailed description of the defendant before she saw his photographs.

7. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHIC LINEUPS—RIGHT TO COUNSEL—CONSTITUTIONAL LAW.

A holding by the United States Supreme Court that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the offender does not prevent Michigan's Supreme Court from promulgating and enforcing greater protection for suspects either under the Michigan Constitution or simply by judicial choice.

Appeal from Kent, John T. Letts, J. Submitted Division 3 October 3, 1973, at Grand Rapids. (Docket No. 15338.) Decided December 6, 1973.

Albert Duke was convicted of breaking and entering an occupied dwelling, unarmed robbery, and

being a habitual felony offender. Defendant appeals. Affirmed, but remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Appellate Attorney, for the people.

*Richard S. McMillin* and *Norris J. Thomas, Jr.,* Assistant State Appellate Defenders, for defendant.

Before: HOLBROOK, P. J., and BASHARA and O'HARA,\* JJ.

O'HARA, J. Following trial to a jury, defendant was convicted of breaking and entering an occupied dwelling, MCLA 750.110; MSA 28.305, and unarmed robbery, MCLA 750.530; MSA 28.798. Arraignment was also had on a supplemental information charging him with being a habitual felony offender, MCLA 769.10; MSA 28.1082, and defendant was sentenced to 4 to 30 years in prison. This appeal followed.

Defendant first alleges that the trial court committed reversible error by allowing the prosecutor to introduce testimony pertaining to certain coins found on the person of defendant at the time of his arrest. He claims the testimony properly belonged in the case in chief and that it was highly prejudicial to defendant that the prosecutor recalled a police witness after the close of the defense case when it would make refutation by the defendant difficult. In the present case, the rebuttal testimony showing that the defendant allegedly com-

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mitted another crime was not introduced for the improper purpose of showing that the defendant committed the crime charged herein. Rather such testimony was introduced for the purpose of directly rebutting defendant's testimony with respect to the events surrounding his arrest. The trial court did not abuse its discretion by admitting the rebuttal testimony of the officer.

The second allegation of improper conduct by the prosecutor relates to the questioning of a defense witness where it is asserted that the prosecutor made several innuendos of sexual impropriety between the witness and defendant.

If defendant believed that the prosecutor was pursuing an improper line of inquiry, he should have made an objection. A careful reading of the transcript coupled with defendant's lack of objection persuades us that the questions did not interfere with defendant's having a fair trial or cause the jury to suspend its own power of judgment in hearing the evidence adduced at trial.

For the first time on appeal defendant cites certain portions of the prosecutor's closing argument as being so improper and prejudicial as to deny defendant his constitutional right to a fair trial.

A prosecutor is entitled to comment on the evidence and draw reasonable inferences therefrom. He is free in final argument to relate the facts to his theory of the case. In this case, the prosecutor attempted to establish a permissible relationship between his theory and the facts in evidence. Defendant made no objection at the time the allegedly offensive statements were made. There was no request for curative or corrective instructions. Hence the error, if any, was waived.

The record belies defendant's next assertion that

he was denied an opportunity to adequately explain mitigating circumstances relating to his criminal convictions and thus was prevented from presenting crucial facts which would have cast his prior acts in a different light. There was no abuse of discretion by the trial judge in placing reasonable limitations on the extent to which defendant could delve into an admittedly collateral matter.

Defendant further contends that the trial judge abused his discretion by allowing the rereading of certain testimony allegedly supporting the prosecution's case to the exclusion of testimony consistent with defendant's theory of the case.

The defendant and his mother operated a used furniture and appliance store. Allegedly a girl came to his establishment and told him that an acquaintance of defendant's, one Curtis, had some goods which might be of interest to defendant. Relying on this supposed understanding defendant innocently drove to the scene of the crime and was met by the same unidentified female outside of an apartment house. She gave him certain merchandise and said that they would settle accounts later. At the time of defendant's arrest the merchandise was seized and subsequently identified as that taken in the burglary. Neither Curtis nor the girl was located or testified at trial.

During their deliberations the jury sent three questions to the judge. Quite properly, he, in the exercise of his discretion, permitted rereading of testimony of two prosecution witnesses in response to what were reasonably specific requests of the jury. The third question was thus framed: "Is there evidence that Curtis and 'the girl' really exist, and is it possible to determine for certain that they left Grand Rapids for California?" Had the trial judge affirmatively responded to this

request he clearly would have infringed on the undisputed right of the jury to resolve controverted questions of fact. Hence the trial judge correctly denied the latter request of the jury.

On oral argument the able representative of the State Appellate Defender's Office argued with great vigor that irrespective of the strict legal test for reversible error we should examine the question of the fairness of the prosecutor in presenting the rebuttal evidence. He urged also that the trial judge could have read into the question by the jury concerning the existence of "Curtis and the girl" a request for a rereading of the defendant's testimony concerning their existence and their having left the state. The panel pointed out the mandate of the statute[1] and the court rule[2] concerning the setting aside of judgments of convictions for claimed instructional error and rulings on the admissibility of evidence. We make good our commitment to him to read the record with care to determine whether a miscarriage of justice may have occured.

The indicia of guilt seem to us to be great. It is difficult indeed to disregard all the evidence which if accepted by the jury linked the defendant to the offense charged and of which he was convicted. We find no miscarriage of justice.

After this case had been submitted and the panel had already addressed itself to the issues briefed, the Appellate Defender's Office made a motion for leave to file a supplemental brief. The practice is strongly disapproved. Of course, there are exceptions. Opinions of the Supreme Court on constitutional questions are usually implicitly retroactive and thus must always be considered.

---

[1] MCLA 769.26; MSA 28.1096.

[2] GCR 1963, 529.

Opinions explicitly given retroactive effect must be considered by us even after a case is submitted. Neither situation obtained in the case at bar. Nevertheless we granted the motion to test the propriety of the use of photographic identification in this case while the defendant was in custody and whether there existed any ascertainable reason why corporeal identification with counsel present could not have been used. These questions are discussed in recently released *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973).

We will attempt to place the issues in clear judicial perspective so that the trial bench and bar will know our interpretation of *Anderson, supra.* The case holds:

"1. Subject to certain exceptions, identification by photograph should not be used where the accused is in custody.

"2. Where there is a legitimate reason to use photographs for identification of an in-custody accused, he has the right to counsel as much as he would for corporeal identification procedures." 389 Mich at 186–187; 205 NW2d at 476.

In the case at bar the defendant was seen by complainant in her apartment while defendant was taking items of her personal property. She had no difficulty with corporeal identification. She was certain, unequivocal, and precise in her description of the intruder to the police. She specified with particularity the items that he took. He struck her and ran from the apartment. She called the police. Defendant was apprehended with the items she specified in his car, a detailed description of which was supplied by an alert newsboy who saw him run from the house. This took place at approximately 4 p.m. The defendant was apprehended in less than half an hour by a cruising

squad car. The phoned description of the intruder and the items taken matched to a point that justifies use of the term "exactly".

When arrested the accused demanded that he be taken back to the apartment and face the woman who identified him and the objects taken. The police for whatever inexplicable reason declined to do so. They took the defendant into custody. They brought the complaining witness to the station. She arrived there by 5 p.m. The defendant was there and locked up. Again the police attempted no corporeal identification. The complainant was allowed to take home some of the items taken by them from the accused.

The following day the police came to the school where complainant teaches and showed her a number of photographs including one of the accused. She immediately picked him out as the man who robbed and struck her.

So identification by photograph took place while the accused was in custody. There was no apparent reason to use photographic identification versus corporeal identification. It is inescapable that both parts of the *Anderson* rule were violated. Thus, if part one were retroactive, grounds for reversal might exist.

We hold part one of the *Anderson* rule is to be prospectively applied. The opinion seems to be grounded on certain philosophical, psychological, sociological theories and case precedential preferences approved by the Supreme Court. There is no language suggesting the retroactivity of the rule. No statement of constitutional basis for the rule is stated in the opinion. The use of the phrase "should not be used" seems to import future application. The identification proceedings in this case antedated *Anderson.* We do not apply it. We com-

mend to the police and prosecutor's attention this new judicial mandate. Failure to do so might result in required reversal of convictions in other cases where the indicia of guilt are as overwhelming as in the case at bar.

As to the second part of the rule as it overlaps (as pointed out by .Mr. Justice BRENNAN in his separate concurrence) settled law, we follow *People v Potts,* 46 Mich App 538; 208 NW2d 583 (1973), released *after* the release date of *Anderson,* and of which the Supreme Court is presumptively aware.

We quote from *Potts* as it bears upon the permissibility of in-court identification if it is independent of the proscribed photographic identification.

"Even assuming the validity of the photographic identification in defendant's favor, the question is whether the in-court identification of defendant by the witness had a source independent of the presumably tainted identification procedure." 46 Mich App at 545–546; 208 NW2d at 587.

If ever there were a source of corporeal identification independent of the presumably tainted photographic procedure it existed in this case.

We also point out that the basis for positive corporeal identification existed before the photographs were shown to the complainant. Thus, she must have made that identification first in order to give the police such a detailed description of the defendant before she saw his photograph.

She had two opportunities for corporeal identification at distances of from 7 to 20 feet in the apartment where the robbery took place. She identified him unequivocally in court at trial. We do not read *Anderson* to mean that with this plethora of corporeal identification the procedural infirmity

in the photographic identification mandates rever-
sal.

We note with interest that the United States
Supreme Court addressed itself to the constitu-
tional aspects of the right to counsel at photo-
graphic lineups.

"We hold, then, that the Sixth Amendment does not
grant the right to counsel at photographic displays
conducted by the Government for the purpose of allow-
ing a witness to attempt an identification of the of-
fender." *United States v Ash,* 413 US 300, 321; 93 S Ct
2568, 2579; 37 L Ed 2d 619, 633 (1973).

This holding, of course, does not prevent Michi-
gan's highest court from promulgating and enforc-
ing greater protection for suspects either under
the Michigan Constitution or simply by judicial
choice. The converse, of course, is not true. Even
our Supreme Court cannot diminish the minimum
constitutional requirements enunciated by the
country's highest constitutional court. We advert
to the decision only so that the people may realize
why their brief-advocated position cannot prevail
over *Anderson, supra.*

We have written to this length and in such
detail herein because *Anderson* is a very extended
opinion. It reflects a great deal of scholarly re-
search and explanatory material some of which
seems to be dicta. The decisional holding is of
prime importance to criminal jurisprudence in this
state. We felt obligated to discuss it with specific-
ity so that if we misconstrue it our error may be
set right by the Supreme Court.

Since the people confess error arising from the
use of an infirm prior conviction for increasing the
maximum allowable sentence under the habitual
offender statute, the case must be remanded to the

circuit court so that defendant may be resentenced.

The conviction is affirmed, but the case is remanded for resentencing.

All concurred.