PEOPLE v McBRIDE

1. CRIMINAL LAW—WITNESSES—EXPERT WITNESSES—TRIER OF FACT—
ACCEPTANCE OF TESTIMONY.

A trial court, as a trier of fact, is not bound to accept the testimony of a defendant's expert witnesses.

2. CRIMINAL LAW—INSANITY—BURDEN OF PROOF.

A trial court did not improperly place upon a defendant the burden of proving that he was sane at the time of the offense charged by concluding that the testimony of defendant's expert witnesses did not constitute evidence of defendant's insanity where the opinions of the trial court show that he was well aware of the people's burden to prove the defendant sane at the time of the offense and that he did not shift the burden to the defendant.

3. CRIMINAL LAW—INSANITY—EVIDENCE—WITNESSES—LAY WITNESSES
—WEIGHT OF EVIDENCE—ADMISSIBILITY OF EVIDENCE.

Testimony of police officers regarding their observations of the behavior of a defendant who claimed insanity was properly admitted lay testimony on the basis of the opportunities which the officers had to observe the defendant, the extent of which was made known to the court; the matter involved a question of weight to be given their testimony rather than one of admissibility.

4. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—ABSENCE OF COUN-
SEL—IN-COURT IDENTIFICATION—INDEPENDENT BASIS.

A photographic showup conducted by police where defense counsel was not present was improper, but the witness's subsequent in-court identification of the defendant will not be deemed inadmissible where the in-court identification was based on the witness's memory and was therefore independent of the tainted photographic showup.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 834 *et seq.*
[2] 21 Am Jur 2d, Criminal Law §§ 50–53.
[3] 30 Am Jur 2d, Evidence § 1080 *et seq.*
[4, 5] 21 Am Jur 2d, Criminal Law §§ 368, 369.

5. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—CASE LAW—RET-
    ROACTIVITY.
    A Supreme Court decision which disallows identification by
    photograph when the accused is in custody is not retroactive
    and therefore this defense is not available to a defendant whose
    trial occurred prior to release of that decision.

Appeal from Kent, John T. Letts, J. Submitted
Division 3 June 3, 1974, at Grand Rapids. (Docket
No. 17499.) Decided August 27, 1974.

Donald G. McBride was convicted of armed rob-
bery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, *Donald A. Johnston, III,*
Chief Appellate Attorney, and *David A. Dodge,*
Assistant Prosecuting Attorney, for the people.

*Loeks, Buth & Wood,* for defendant on appeal.

Before: HOLBROOK, P. J., and T. M. BURNS and
R. L. SMITH,* JJ.

T. M. BURNS, J. On October 12, 1971, a com-
plaint and warrant were issued charging defend-
ant with the October 9, 1971, armed robbery of a
Grand Rapids motel.[1] Following his preliminary
examination on October 18, 1971, defendant was
bound over to circuit court. An information charg-
ing defendant with armed robbery was filed on
October 21, 1971, and on the following day, defend-
ant stood mute at his arraignment on the informa-
tion.

Pursuant to defense counsel's petition and plain-
tiff's stipulation, on October 28, 1971, the trial

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.
[1] MCLA 750.529; MSA 28.797

court ordered defendant committed to the Center for Forensic Psychiatry of the Department of Mental Health for a psychiatric evaluation concerning his competence to stand trial. On November 30, 1971, plaintiff moved for a hearing on the question of defendant's competence to stand trial, the motion stating that the Center for Forensic Psychiatry had found defendant incompetent. After a December 9, 1971, competency hearing, the trial court found defendant to be incompetent to stand trial and ordered him committed to a mental hospital.

Just over one year later, on December 12, 1972, plaintiff moved for another competency hearing on the ground that it had been notified by the Department of Mental Health that defendant was now mentally competent to stand trial. The trial court held another hearing on this matter and then issued an order finding defendant competent to stand trial. On January 11, 1973, defense counsel filed notice of an insanity defense and also moved for suppression of the identification of defendant by prosecution witness Anthony Zainea on the ground that it was tainted by a prior photographic showup where counsel was not present.

Trial began before the court, sitting without a jury, on January 17, 1973. The plaintiff's evidence showed that some time after 12 a.m. on October 9, 1971, two men entered the motel office of Anthony Zainea, owner of the Lazy-T Motel in Grand Rapids, Michigan. Mr. Zainea testified that after asking about a room, one of the men pulled a gun, aimed it at him, and demanded money. The men took approximately $65 or $70 from the cash drawer and some additional money from Zainea's wallet, and then tied him up with tape and fled the scene. Mr. Zainea identified defendant in court as the man who had pulled the gun.

On cross-examination, Mr. Zainea testified that he was shown photographs by police on October 11, 1971. He stated that he had not definitely identified a photograph of defendant at the police showup, but that he did identify defendant in a newspaper photograph which appeared on October 13, 1971. Subsequently Mr. Zainea modified his testimony somewhat when he said that prior to the October 13 newspaper photograph he had seen three or four pictures taken of defendant after his arrest on an unrelated charge on October 10. After defense counsel reminded him of his prior preliminary examination testimony, Mr. Zainea stated that he was "almost positive" of defendant's pictoral identification prior to the October 13, newspaper photo, but was "100 percent positive" after seeing the newspaper picture. Finally, on redirect examination, Mr. Zainea testified that his identification of defendant at the preliminary examination was based upon his observance of defendant at the time of the robbery and did not depend upon any photograph of defendant which he had observed.

Grand Rapids Police Officer Lee Brenner testified that in the early morning hours of October 10, 1971, he and his partner, Thomas Nicholson, investigated a disturbance outside a Grand Rapids bar involving a man with a gun. The man, later determined to be defendant, was arrested for violation of the city firearms law and his weapon, a .175-caliber air pistol, was confiscated. This pistol was identified at trial by Mr. Zainea as closely resembling the weapon used during the holdup of his motel. Policeman Nicholson's testimony corroborated what his partner, Lee Brenner, had said.

Grand Rapids Police Sergeant Jack Hawley testified that after investigating defendant's alleged

firearms violation, he suspected defendant might have been involved in the motel holdup and, therefore, contacted State Police Officer Melvin Hampton, who was investigating the motel robbery.

Officer Hampton testified that on October 11, he showed Mr. Zainea a mug shot of defendant and pictures of four other individuals. Although he could not reconstruct or reproduce that group of five photos, he stated that Mr. Zainea had positively identified defendant at that time.

After plaintiff rested its case, and the trial court denied defendant's motion to strike Mr. Zainea's identification testimony, the defense called Dr. Roger Olive, Director of Clinical Psychology at Ionia State Hospital, where defendant had been confined prior to being declared competent to stand trial. Dr. Olive, testifying as to the issue of defendant's sanity at the time the alleged offense was committed, stated on direct examination that in his opinion defendant wasn't capable of appreciating the seriousness of his acts, but admitted on cross-examination that defendant probably knew his acts were wrongful. Dr. Leonard Rosenzweig, a psychiatrist who had examined defendant on January 13, 1973, testified that he didn't believe defendant knew right from wrong but conceded on cross-examination that his diagnosis of defendant was based entirely on information that defendant chose to reveal to him during this one interview and admitted that it would have been to defendant's advantage not to relate to him facts concerning participation in the robbery.

After the defense rested, the trial court, over defense counsel's objection, allowed the plaintiff to recall officers Brenner and Nicholson as rebuttal witnesses on the issue of whether or not defendant appeared to act normally when the officers ar-

rested him in front of the Grand Rapids bar the day after the motel robbery. Both officers testified that they noticed nothing in defendant's conduct to indicate that he had a mental condition.

The trial was then adjourned until February 5, 1973, when the trial court rendered its verdict of guilty. On February 28, 1973, defendant was sentenced to a term of from 10 to 25 years in prison. A motion for a new trial was filed on March 20, 1973, and was denied by the trial court on June 1, 1973, for the reasons set forth in its May 30, 1973, opinion. Defendant now appeals his conviction and the denial of a new trial, assigning three allegations of error.

Defendant first contends that the trial court committed reversible error by improperly placing upon defendant the burden of proving that he was sane at the time of the alleged offense. Defendant claims that the testimony of the two doctors met the Michigan test for insanity as set forth in *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), and that the burden was, therefore, on the plaintiff to prove defendant was sane at the time of the offense.

Defendant presented this same argument to the trial court in his motion for a new trial. In denying the motion for a new trial and rejecting defendant's argument, the trial court stated:

"1. That it is well aware of the Michigan law that the people must prove beyond a reasonable doubt that the defendant was sane when he committed a crime, when the defendant introduces evidence of insanity at the time of the offense. The court finds that the people did prove beyond a reasonable doubt that the defendant was sane when he committed the crime.

"2. The court does not agree with the defendant that the testimony of Doctors Olive and Rosenzweig consti-

tuted evidence of defendant's insanity at the time of the offense.

"3. The court finds that the people did not fail to prove beyond a reasonable doubt that the defendant was sane at the time when the crime was committed."

We consider it necessary to point out to defendant that the trial court was not bound to accept the testimony of defendant's expert witnesses. In *People v Stoddard,* 48 Mich App 440, 447–448; 210 NW2d 470 (1973), we said:

"As trier of fact, the court was not bound to accept the opinion of defendant's expert. That this is the law in Michigan, even in a case where the people do not offer expert testimony, was decided in *People v English,* 29 Mich App 36, 51; 185 NW2d 139, 147 (1970):

" 'Triers of fact are not bound to accept opinion testimony, however expert and authoritative, because opinion testimony is not of the highest order. * * * If, under all the testimony in this case, the jury was compelled to accept questionable opinions of fact, then the doctors, not the jury, would have been determining the facts. We do not think the law of Michigan requires such a result, nor do we think that it should require such a result.' "

And in *People v Martin, supra,* our Supreme Court stated at p 422:

"It should never be forgotten that it is the jury (or the judge if a jury is waived) who is the ultimate trier of the fact of criminal insanity. In most cases, the expert knowledge of psychiatrists can be of assistance to the jury or judge in arriving at their determination, but under our system of justice that ultimate determination rests with the court or a defendant's jury of his peers."

In the case at bar the trial court heard the testimony of Doctors Olive and Rosenzweig and concluded that their testimony did not constitute

evidence of defendant's insanity at the time of the offense. We find no error in that conclusion. Furthermore, after a careful review of both the court's trial opinion and opinion denying defendant's motion for a new trial, we are convinced that the court was well aware of plaintiff's burden to prove defendant sane at the time of the offense and that at no time did the trial court improperly shift this burden upon defendant during trial.

Defendant next alleges that the trial court improperly admitted into evidence, over defense counsel's objection, lay testimony on the issue of defendant's sanity at the time of the alleged offense. The trial court allowed the plaintiff to question officers Brenner and Nicholson concerning their observations of defendant at the time of his arrest on October 10. Defendant argues that under the authority of *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), their testimony was inadmissible. The plaintiff, on the other hand, contends that these witnesses did not provide opinion testimony as to defendant's sanity, but merely testified as to their observations of defendant at the time they arrested him.

Defendant's reliance on *People v Cole, supra,* is misplaced. In *People v Alsteens,* 49 Mich App 467, 473–474; 212 NW2d 243 (1973), a case factually similar to the case at bar, our Court stated:

"We note at the outset that defendant's reliance upon *People v Cole, supra,* ignores the fact that no controlling majority opinion was rendered in that case. Justices KAVANAGH, DETHMERS, and BRENNAN concurred upon the necessity to lay a foundation for lay witnesses' opinion evidence of sanity or insanity, requiring that the witness have the opportunity to observe the speech, manner, habits, or conduct of the person in addition to establishing sufficient acquaintance with the defendant so as to be able to testify on a comparative basis.

Justice ADAMS concurred in the result, but relied upon the rule stated in *People v Zabijak,* 285 Mich 164, 185; 280 NW 149, 157 (1938), that '[a] nonexpert witness who has had ample means to observe and form conclusions as to the mental condition of a person and who testifies to pertinent facts on which his conclusions are based may state his conclusions as to the insanity of a person'. Justice KELLY concurred specially, stating that insufficient evidence was introduced to prove defendant's sanity. Reversal in *Cole,* then, was based upon either the lack of opportunity to compare the witness's conduct on different occasions, the lack of ample means to observe, form conclusions or testify to the facts upon which the conclusions were based, or the insufficiency of evidence to outweigh that which casts a reasonable doubt as to defendant's sanity. Failing to arrive at a majority opinion on this issue, *Cole* is of limited precedential value."

In holding the testimony of lay witnesses concerning the sanity of defendant admissible, the *Alsteens* Court went on to say at p 474:

"We are persuaded that the testimony adduced from lay witnesses on the basis of their opportunity to observe defendant is admissible. In *People v Hannum,* 362 Mich 660, 665; 107 NW2d 894, 896 (1961), the Court defined the question of admissibility of lay witness testimony regarding the sanity of defendant as being one of weight and not admissibility. There, objection was made to the testimony of three police officers who had observed the defendant for a short period of time prior to her arraignment in the shooting death of her husband. Each officer testified that defendant was sane. Defendant argued that the lack of proper foundation in addition to the lack of sufficient opportunity to observe the defendant rendered the testimony incompetent, citing *People v Zabijak, supra.* The *Hannum* court distinguished *Zabijak* in stating that the latter testimony did not consist of lay witnesses' opinions of defendant's insanity, but rather their conclusions as to what facts there were about defendant from which insanity might be inferred. The instant case does not

fall within either category. Each witness responded negatively when asked if defendant's conduct was unusual or any degree of intoxication existed. The nature of the testimony in each case confirmed defendant's sobriety and sanity rather than revealing any unnatural conduct or language. This distinction is made clear in *People v Hannum, supra,* at 663–664; 107 NW2d at 896 * * * ."

We are of the opinion that the trial court did not err in admitting the lay testimony on the basis of the opportunities the officers had to observe defendant, the extent of which was made known to the court. The matter involved a question of weight to be given their testimony rather than one of admissibility. *People v Hannum, supra* at 665; 107 NW2d at 896; *People v Alsteens, supra* at 475; 212 NW2d at 247. Furthermore, based on the fact that the trial court concluded that the evidence of the two expert witnesses, Doctors Olive and Rosenzweig, did not constitute evidence of defendant's insanity at the time of the offense, we are convinced that the trial court placed little reliance, if any, on the lay testimony of the officers. Therefore, even if we were to hold that the trial court erred in admitting their testimony, such error would be harmless and would not mandate reversal.

Defendant finally asserts that he was denied his constitutional right to counsel at a pretrial photographic showup and that, therefore, the identification testimony of Mr. Zainea was improperly admitted into evidence by the trial court.

In light of the legal principles recently enunciated by our Supreme Court in *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), and *People v Anderson,* 391 Mich 419; 216 NW2d 778 (1974), the photographic showup conducted by police officers where defense counsel was not present, and now

challenged by defendant on appeal, was improper and constituted error. However, this does not mean that the trial court erred in admitting Mr. Zainea's identification testimony. The witness's subsequent in-court identification of defendant will not be deemed inadmissible if it had a source independent of the tainted identification procedure. *People v Duke,* 50 Mich App 714; 213 NW2d 769 (1973); *People v Potts,* 46 Mich App 538; 208 NW2d 583 (1973); *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972). The evidence indicates that the witness, Mr. Zainea, observed the defendant for an extended period of time during the course of the robbery. The trial transcript clearly supports the conclusion that Mr. Zainea's in-court identification was based on his memory of the incident and not upon the tainted photographic showup. We, therefore, find that this testimony was admissible since the identification of defendant was independent of the photographic identification.

Defendant's reliance on *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), is misplaced. In that case the Supreme Court disallowed identification by photograph when the accused is in custody. Since this rule is not to be applied retroactively, *People v Duke, supra,* this defense is not available to defendant as his trial occurred prior to the release of the *Anderson* decision.

Affirmed.

All concurred.