PEOPLE v. JOSEPH BARBARA, JR.

1. EVIDENCE—WITNESSES—OBJECTIONABLE TESTIMONY—NEW TRIAL
   —APPLICABLE STANDARDS.

   Two standards exist for determining whether objectionable evi-
      dence has so prejudiced a jury that a new trial must be
      granted to a defendant in a criminal prosecution:   a new
      trial must be granted when a witness's testimonial injection
      of extraneous remarks is so inherently prejudicial or inflam-
      matory that they become an "ink spot" on the jurors' minds
      which may not be erased by the court's cautionary instructions
      to disregard such testimony; however, the second standard
      recognizes that where the court strikes all references to that
      objectionable testimony and cautions the jury to disregard
      it, the jurors are presumed to have considered only the testi-
      mony which the court has permitted to stand.

2. EVIDENCE—WITNESSES—OBJECTIONABLE TESTIMONY—NEW TRIAL
   —APPLICABLE STANDARD.

   The choice of which evidentiary standard to apply in determin-
      ing whether a defendant is entitled to a new trial because
      of objectionable testimony given in the presence of the jury
      ultimately rests upon the degree of prejudice generated by
      that evidence since only if that testimony is inherently prej-
      udicial or inflammatory will there be an "ink spot" on the
      jurors' minds which cannot be erased by cautionary instruc-
      tions.

3. EVIDENCE—WITNESSES—OBJECTIONABLE   TESTIMONY—INFLAMMA-
   TORY—CAUTIONARY INSTRUCTIONS—NEW TRIAL—APPLICABLE EVI-
   DENTIARY STANDARD.

   Prosecution witnesses' unresponsive, irrelevant, spontaneous, and

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3]  53 Am Jur, Trial §§ 98, 671.
[4, 5]  53 Am Jur, Trial § 129.
[6, 7]  58 Am Jur, Witnesses § 674 et seq.
[8]  17 Am Jur 2d, Continuance § 3.
[9]  5 Am Jur 2d, Appeal and Error § 867.

voluntary answers which implied that defendant and his attorneys were connected with the Mafia were not so inherently inflammatory or so prejudicial as to cause reversible error where the trial court sufficiently instructed the jury to disregard such utterances, thus curing the possibility of prejudice to defendant.

4. EVIDENCE—REOPENING OF PROOFS—WITNESSES—REBUTTAL TESTIMONY—DISCRETION.

The discretionary power of the trial judge to allow rebuttal evidence will not be disturbed unless clearly abused; therefore the trial court did not err, after the prosecution explained why a particular witness indorsed on the information did not testify earlier, by allowing the witness to testify in rebuttal after the defense had rested where the court instructed the jury not to give undue weight to the witness's testimony because of her position in the list of witnesses, and her testimony did not add anything new but merely corroborated the earlier testimony of another witness.

5. EVIDENCE—WITNESSES—TESTIMONY—RECEPTION ON REBUTTAL—PREJUDICE—DISCRETION.

Reception of testimony on rebuttal which should have been offered on direct examination is within the discretion of the trial court and where that testimony merely expands or supports previously admitted testimony, the rebuttal testimony is not prejudicial and its reception is not an abuse of discretion.

6. EVIDENCE—WITNESSES—CRIMINAL LAW—IMPEACHMENT—COLLATERAL ISSUES—EXCLUSION.

Exclusion of defense witnesses' testimony was proper where it was offered to show that complainant was testifying against defendant because she feared her husband and that her husband, angry because his own appeal from a previous criminal conviction, with which defendant had agreed to help, had not gone as well as anticipated was in retaliation, testifying falsely against defendant, since the defense-offered testimony constituted attempts to impeach complainant and her husband on collateral matters and did not show any scheme, design, or bias on their part in testifying as they did against defendant.

7. EVIDENCE—WITNESSES—CRIMINAL LAW—IMPEACHMENT—COLLATERAL ISSUES—EXCLUSION.

Elicitation from complainant on cross-examination that she had started divorce proceedings against her husband precluded

defendant from attempting to impeach her answer on this collateral matter by showing that she was actually testifying against defendant because she feared her husband and not because defendant had committed any criminal acts against her, since the answer of a witness on cross-examination as to a merely collateral matter becomes binding upon the cross-examiner.

8. Continuance—Discretion—Pregnancy of Witness.

A continuance is a matter of discretion with the trial court, therefore it was not unduly prejudicial to defendant nor an abuse of discretion for the trial court to deny defendant's request for continuance because the complaining witness was an obviously pregnant woman, whose cross-examination would create juror sympathy where considerable delay had already surrounded the proceedings and some of the prosecution's witnesses wanted to leave the country.

9. Appeal and Error—Courts—Miscarriage of Justice.

A lower court will be upheld on appeal where it is eminently clear that the lower court's rulings were fair and based upon established law, and it does not affirmatively appear that there has been a miscarriage of justice (MCLA § 769.26).

Appeal from Oakland, Frederick C. Ziem, J. Submitted Division 2 April 13, 1970, at Lansing. (Docket No. 8,150.) Decided April 29, 1970. Leave to appeal denied July 16, 1970. 383 Mich 803.

Joseph Barbara, Jr., was convicted of extortion. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Ivan E. Barris (Neil Howard Fink,* of counsel), for defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and VAN DOMELEN,* JJ.

FITZGERALD, J.   Joseph Barbara, Jr., the defendant in the instant case, was charged with the extortion of Mrs. Peter (Delores) Lazaros contrary to CL 1948, § 750.213 (Stat Ann 1962 Rev § 28.410). Defendant stood mute to the charge and a plea of not guilty was entered on his behalf.   Following several adjournments, the trial commenced on August 1, 1969.   Objection was raised by the defense to holding the trial at that time since the complaining witness was pregnant.   The matter was submitted to a jury on August 12, 1969, which found the defendant guilty of the crime with which he was charged.   On September 19, 1969, defendant was sentenced to serve 7 to 20 years in prison.

During the course of the trial, Mrs. Lazaros testified that Joseph Barbara, Jr., came to her home while her husband was in prison and, through the use of threats upon the lives of members of her family, was successful in efforts to rape and extort money from her.   It was alleged that defendant informed Mrs. Lazaros that if she did not cooperate, he would have her husband killed in prison.   Complainant charged that similar threats were made on her son's life.

The complainant feared for her husband's life and informed no one of these events until some six months later when her husband returned from prison.   A complaint was then filed with the State Police which resulted in defendant's arrest.

Testimony was also elicited from Nicholas Lazaros, father of Peter Lazaros, to the effect that defendant had come to the Lazaros home while his

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

son and daughter-in-law were at the police station. Threats were made and defendant pushed the elder Lazaros to the ground. Evidence was also introduced that Barbara had agreed to help Peter Lazaros on his appeal from a previous criminal conviction and that Lazaros was angry because things had not gone as well as anticipated.

Following the prosecution's rebuttal, the name of Tischia Lazaros, mother of Peter Lazaros, was reindorsed upon the information. Her name was originally on the information, but it was removed during trial. She corroborated the testimony previously given by her husband, Nicholas Lazaros.

Several issues are raised on this appeal; the first concerns the question of whether the continuous injection by witnesses Peter and Delores Lazaros of extraneous matters in the presence of the jury deprived defendant of his right to a fair trial by an impartial jury. The allegedly prejudicial matters concern references made which imply that defendant and his attorneys were connected with the "Mafia", thus inferring a guilt by association. Defendant argues that in light of the remarks made, the judge's instructions to the jury, striking all references to the above subject, were not sufficient because of the inflammatory nature of these utterances.

The people argue that defendant's attorneys deliberately phrased questions which were calculated to bring out references to the "Mafia", thus inviting error for purposes of having a mistrial declared.

In *People* v. *Wolke* (1968), 10 Mich App 583, this Court addressed itself to questionable evidence injected into a trial. The Court discussed the question of when objectionable evidence will be held to so prejudice a jury that a new trial must be granted. In analyzing the applicable authorities, it was found

that two standards exist; namely, that once a prejudicial remark is made, the "ink spot" may not be blotted from the minds of a jury by express instructions. On the other hand, recognition was also given to a line of cases which presumed that a jury considers only the testimony permitted by a court to stand. This Court held that the choice of which standard to apply ultimately rests upon the degree of prejudice generated by the objectionable evidence. Only if the testimony is inherently prejudicial or inflammatory will there be an "ink spot" on the minds of the jurors which cannot be erased.

In the case at bar, we are dealing with unresponsive, irrelevant, and spontaneous answers volunteered by two witnesses. In 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 600, p 778, it is stated:

"Error cannot be predicated upon the fact that a witness gives an improper or irrelevant answer where the question was a proper one and neither the court nor counsel was at fault. Improper testimony offered by a witness and promptly struck out by the court on objection is not reversible error. * * * A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge; and if what he says or does improperly is likely to do much mischief, it is presumed that the judge will apply the proper corrective measures in his instructions if requested to do so."

A review of the problem with which we are faced leads to the inescapable conclusion that if error could be easily predicated on the improper utterances of a witness, it would be most difficult ever to conduct a proper trial. *People* v. *Droste* (1910), 160 Mich 66.

Unresponsive answers, irrelevant in nature alone, are not sufficient to cause reversible error. The instructions to disregard the utterances made were quite sufficient to instruct the jury on those matters not properly before them and cured the possibility of prejudice to defendant.

The next question discussed concerns an alleged error in permitting the prosecution to call Mrs. Tischia Lazaros in rebuttal to help prove its case in chief. Defendant asserts that such a last minute action, after the defense had rested its case in rebuttal, unfairly prejudiced defendant's rights. The people argue that the question of reopening the proofs is solely within the court's discretion and, further, that the testimony only related to matters which they had previously introduced.

In support of this assignment of error, defendant relies on our previous decision in *People* v. *Sacharczyk* (1969), 16 Mich App 710. However, the facts are readily distinguished from those in the case at bar. In *Sacharczyk,* it was held that the allowance of rebuttal evidence was improper because the witness there introduced had never been indorsed on the information, no explanation of failure to indorse was given, and the testimony itself was improper as it tended to prove surrounding circumstances of the crime. A review of the record discloses that Tischia Lazaros had been indorsed on the information and the testimony elicited was rebuttal of defendant's earlier testimony. Furthermore, the rule in Michigan places the question of whether to allow rebuttal evidence within the discretionary powers of the trial judge, and this will not be disturbed unless clearly abused. *People* v. *Chimovitz* (1927), 237 Mich 247; *People* v. *Delano* (1947), 318 Mich 557. The testimony in question does not add anything new, but merely corroborates the earlier

testimony of Nicholas Lazaros. The record also evidences the fact that the trial judge instructed members of the jury not to give undue weight to Mrs. Tischia Lazaros' testimony due to her position in the list of witnesses. Explanation was also given as to why the particular witness had not testified earlier and assurances were made by the prosecution that the situation had been corrected.

In *People* v. *Leonard E. Smith* (1968), 15 Mich App 173, this Court, citing *People* v. *Cox* (1888), 70 Mich 247, ruled on the reception of rebuttal evidence which should have been brought out on direct examination. It was held therein that the reception of testimony on rebuttal which should have been offered on direct examination is within the discretion of the trial court, unless such discretion is clearly abused. It was further held that where the testimony in question merely expands or supports previously admitted testimony, it is not prejudicial. Hence, we find the decision of the trial court in admitting the woman's testimony to be reasonable and, for the reasons delineated above, reversible error was not committed in the particular instance.

The next issue to be considered is whether the trial court erred in not admitting the testimony of two witnesses to contradict the testimony of Peter and Delores Lazaros. Defendant argues that one of these witnesses would have testified to the effect that Mrs. Lazaros had stated that her husband had threatened to kill her and this would have been demonstrative of the fact that she was testifying out of fear of her husband. Defendant further argues that the testimony of the other witness would have lent support to his theory that Lazaros was attempting to snare defendant in a network of lies. The people rely on the trial court's reasoning that the testimony of the two witnesses only attempts

to impeach on a collateral matter and does not show any scheme or design or bias by the prosecution's witnesses in testifying as they did.

It is evident that the trial court was correct in its ruling since defendant has not substantiated his argument that the testimony of these witnesses would show the interest or bias of the complaining witness and her husband, and it appears merely to be an attempt at impeachment on a collateral matter. The reasons why Peter Lazaros might falsely testify about defendant were before the court as a result of other testimony and, in addition, the fact that Mrs. Lazaros had started divorce proceedings against her husband was brought before the jury on cross-examination. The trial court has wide discretion in this area as exemplified by *People* v. *MacCullough* (1937), 281 Mich 15, where the Court stated:

"The discretion of the trial court upon the subject of cross-examination on collateral matters is not subject to review unless it is shown to have been grossly and oppressively abused. So far as the cross-examination of a witness relates either to facts at issue or relevant facts, it is a matter of right; but when its object is credibility of a witness, its method and duration are subject to the discretion of the trial judge and unless abused, its exercise is not the subject of review."

Therefore, this Court finds that the answer of a witness on cross-examination as to a merely collateral matter becomes binding upon the cross-examiner and may not be contradicted through introduction of further testimony of other witnesses regarding these collateral matters.

Last, defendant asserts that it was unduly prejudicial to his cause not to postpone the trial until the complainant had given birth to her child. He

contends that having to cross-examine an obviously pregnant woman before the jury created sympathy among the jurors and denied him a fair trial. We cannot accept defendant's argument, for the law in Michigan is quite clear that a continuance is a matter of discretion with the trial court. The court had good reason for denying the continuance in that considerable delay had already surrounded the proceedings and some of the prosecution's witnesses wanted to leave the country. In *People* v. *O'Leary* (1967), 6 Mich App 115, this Court was faced with a similar situation where the complaining witness in an involuntary manslaughter case was pregnant and a continuance was denied by the trial court. This Court affirmed the decision, stating that such matters were discretionary and no abuse existed. In the instant case, we cannot find that the lower court abused its discretion in denying the continuance.

In each of the issues raised on this appeal, it seems eminently clear that the trial court's rulings were fair and based upon established law. The lower court must be upheld since, in light of CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096), it does not "affirmatively appear" that there has been a "miscarriage of justice".

Affirmed.

All concurred.