PEOPLE v DREW

OPINION OF THE COURT

1. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—IN-CUSTODY AC-
   CUSED—IN-COURT IDENTIFICATION—INDEPENDENT BASIS.

   Photographic identification of a criminal suspect should not be
   used where the accused is in custody, however, if it is used the
   accused has a right to have counsel present at the photographic
   showing; such a photographic showing without counsel present,
   although error, will not render inadmissible later in-court
   identification testimony if that testimony has a basis indepen-
   dent of the tainted photographic display procedures.

2. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHIC IDENTIFICATION—
   INDEPENDENT BASIS.

   A robbery victim's identification of a defendant was properly
   admitted into evidence even though the defendant was not
   represented by counsel at a photographic showup held while
   the defendant was in custody where the prosecution showed by
   clear and convincing evidence that the victim's identification of
   the defendant had a basis independent of the photographic
   identification procedure.

3. WITNESSES—CRIMINAL LAW—CROSS-EXAMINATION—COLLATERAL
   MATTERS—REBUTTAL.

   The answers of a witness on cross-examination as to merely
   collateral matters become binding on the cross-examiner and
   may not be contradicted through introduction of further testi-
   mony of other witnesses regarding those collateral matters.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[3, 4] 81 Am Jur 2d, Witnesses §§ 474–476, 520.
[5–7] 81 Am Jur 2d, Witnesses § 523 *et seq.*
    30 Am Jur 2d, Evidence § 1175.
    Constitutionality and construction of statute enhancing penalty for
      second or subsequent offenses. 132 ALR 91 s. 139 ALR 673.
    Evidence of identity for purposes of statute as to enhanced punish-
      ment in case of prior conviction. 11 ALR2d 870.

4. WITNESSES—CRIMINAL LAW—REBUTTAL TESTIMONY—COLLATERAL
MATTERS—HARMLESS ERROR.

> Admission of rebuttal testimony regarding a loan made to a
> defendant by his brother, which was clearly collateral where it
> had been established that the defendant was in dire financial
> straits, was harmless error because the brothers agreed that
> there had been a loan and the only disagreement was as to the
> time the loan had been made.

5. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS—
JUDGE'S DISCRETION.

> The admission of evidence of prior felony convictions for impeach-
> ment purposes is a matter within the discretion of the trial
> judge.

6. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS—
LENGTH OF SENTENCES—WAIVER OF OBJECTION—PRESERVING
ISSUE.

> Allowance of testimony as to the length of a defendant's prior
> sentences for purposes of impeachment is reversible error; the
> fact that such information is brought out by the defense attor-
> ney does not constitute a waiver where there had been a prior
> ruling by the trial court that either counsel could inquire into
> the defendant's prior felony convictions and number of years
> spent in prison, and the defense counsel had objected to that
> prior ruling and had preserved the issue.

CONCURRENCE IN PART AND DISSENT IN PART BY
D. E. HOLBROOK, JR., J.

7. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS—
LENGTH OF SENTENCES—QUESTIONING BY DEFENSE COUNSEL—
WAIVER OF OBJECTION.

> *The rule prohibiting impeachment of a defendant by reference to*
> *the length of his prior sentences is not addressed to the*
> *situation where defense counsel questions the defendant about*
> *his prior sentences on direct examination, and a defense coun-*
> *sel who did so thereby waived his objection to a ruling of the*
> *trial court that testimony concerning a defendant's total prior*
> *sentences would be permitted.*

Appeal from Oakland, John N. O'Brien, J. Sub-
mitted October 16, 1975, at Lansing. (Docket No.
22791.) Decided February 10, 1976. Leave to ap-
peal denied, 397 Mich —.

Edward L. Drew was convicted of armed robbery. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *David A. Potts,* Assistant Appellate Counsel, for the people.

*Charles H. Gabe,* for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK, JR. and M. J. KELLY, JJ.

M. J. KELLY, J. Defendant was charged with armed robbery, contrary to MCLA 750.529; MSA 28.797. Defendant was found guilty as charged by a jury, and sentenced to 15 to 30 years in prison. He appeals as of right.

Defendant has made five assignments of error. We will discuss only three of these at length. As to the others, we have considered them and determined that no error was committed.

I.

The defendant first contends that the trial court should have precluded the identification of the defendant by the robbery victim because her identification was tainted by a prior improper photographic showup.

The victim of the armed robbery, Jeanne Gossett, was requested by the Walled Lake Police Department to view three photographic showups. The appellant asserts that his right to counsel was violated by the third photographic showup. The appellant's appointed counsel was not present at that photographic showup which was held while

he was in custody. Furthermore appellant asserts that all the photographic showups were suggestive and thus tainted the victim's subsequent identification of the defendant at a lineup and in court.

The law in Michigan regarding photographic identifications was succinctly set forth in *People v Curry,* 58 Mich App 212, 215–216; 227 NW2d 254 (1975):

"The defendants are correct when they cite *People v Franklin Anderson,* 389 Mich 155; 205 NW2d 461 (1973), for the rule that photographic identification should not be used where the accused is in custody.

\* \* \*

"Defendants are also correct in maintaining that, under *Anderson, supra,* once they were in custody, they had a right to counsel at the photographic showings, and that failure to provide counsel was error. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974); *People v James Anderson,* 391 Mich 419; 216 NW2d 780 (1974). However, even though it was error to conduct these photographic showings without counsel present, it is well settled that this will not render inadmissible later in-court identification testimony if that testimony has a basis independent of the tainted photographic display procedures. *People v Franklin Anderson, supra; People v James Anderson, supra; People v Duke,* 50 Mich App 714; 213 NW2d 769 (1973); *People v McBride,* 55 Mich App 234; 222 NW2d 195 (1974); *People v Edwards,* 55 Mich App 256; 222 NW2d 203 (1974)."

In the case at bar, an evidentiary hearing was held to determine whether Mrs. Gossett's identification had a basis independent of the photographic identification procedure. Mrs. Gossett testified that the defendant came into the dry-cleaning establishment three times on the day of the robbery. The first time he came in at approximately 3 p.m., and stayed for approximately ten minutes. The

second time, at approximately 4 p.m. he remained in the cleaners for 25 minutes, purportedly awaiting the arrival of his girl friend with a missing claim check. The defendant returned for a third time between 5:30 p.m. and 5:45 p.m., at which time he perpetrated the robbery. After the robbery, Mrs. Gossett was reluctant to describe her assailant to the police because, she testified, he threatened her life if she identified him or told what he looked like. Eventually, however, she did give a description to the police.

At the evidentiary hearing, Mrs. Gossett gave a complete description of the man who robbed her. She described his complexion, type of clothing, hat, mustache, sideburns, and tattoos on his arms. She also recalled the nature of the transactions in his two earlier visits. He had brought in a shirt for cleaning, and attempted to pick up some dry cleaning, but didn't have a ticket, and there was no record of any such dry cleaning. She also recalled the names of the other customers he spoke with while in the store.

Mrs. Gossett testified that she was positive of her identification of the defendant based on his facial appearance and seeing him on the day of the robbery. Under the circumstances in the case at bar, we believe that the prosecution showed by clear and convincing evidence that Mrs. Gossett had an independent basis for her identification of the defendant. Therefore, we find no error in the lower court's decision to admit her identification testimony.

II.

The defendant next alleges that the trial court erred by allowing the prosecutor to introduce a

witness to attack the credibility of the defendant on a collateral matter.

On cross-examination, the defendant testified that he had borrowed money from his brother during June or July, 1973, *i.e.,* shortly before the robbery. After the defense rested its case, the prosecution called John Drew, the brother, as a rebuttal witness. Defense counsel objected, alleging that the prosecutor was about to impeach a witness on a collateral matter. The trial judge overruled the objection, stating:

"There was so much time spent with direct inquiry of the defendant regarding employment and his economic circumstances. It has become a very large part in the defense of the case."

John Drew took the stand and testified that he had never loaned his brother any money during June or July, 1973. However, upon cross-examination by defense counsel, the witness admitted that he had loaned his brother money when his brother first got out of prison.

The appellant is correct when he points out that the answer of a witness on cross-examination as to merely collateral matters becomes binding on the cross-examiner and may not be contradicted through introduction of further testimony of other witnesses regarding these collateral matters. *People v McGillen #1,* 392 Mich 251, 266–267; 220 NW2d 677 (1974), *People v Barbara,* 23 Mich App 540; 179 NW2d 105 (1970). The question to be determined, then, is whether the loan of money to defendant by his brother is collateral or material.

During the direct examination of the defendant the defense counsel went into great detail about the defendant's finances. He painted the picture of an ex-convict who could not keep a job because he

was haunted by his criminal record, who had little money and often slept in his car, and who lived on loans from relatives and friends.

In addition to testifying regarding the events of the day of the robbery, July 28, 1973, the defendant also testified that, a few days later, he was picked up and spent five days in the Detroit House of Correction because he did not have $57.50 to pay for traffic tickets. Defense counsel argued to the jury that a man who had $400 in proceeds from a robbery would not choose to spend five days in jail rather than pay a fine.

On cross-examination, the prosecutor elicited testimony that the defendant borrowed $20 or $30 from his brother, John Drew. Defendant said he could not remember when he borrowed the money, but under further questioning stated that it was "sometime" in June or July. Shortly thereafter the prosecutor offered John Drew as a rebuttal witness to testify that he had not lent any money to his brother during June or July.

In the circumstances of this case, the issue of whether or not the defendant's brother had lent him $20 or $30 in June or July is clearly collateral. Regardless of whether or not the defendant received the loan, it is plain that he was leading a hand to mouth existence during this period of time. He himself testified to dire financial straits. Furthermore, the employees of a restaurant near the dry cleaning establishment testified that the defendant had been in the restaurant on the day of the robbery attempting to obtain a free cup of coffee. Apparently, on the day of the robbery, the defendant was penniless.

On the other hand, we do not agree with the defendant that the testimony of John Drew was highly prejudicial to the defendant. Although the

defendant testified that the loan was given some-time during June or July, he had earlier been quite vague about exactly when he received the loan. When this testimony is coupled with John Drew's testimony that he had given his brother a loan at some unspecified time after the brother got out of prison, but not during June or July, we can see that the impeachment value of John Drew's testimony was almost nil. The brothers agreed that there had been a loan. They only disagreed on the period of time when the loan was made. There-fore, we find that the trial court's error in admit-ting the rebuttal testimony was harmless, and does not require reversal of defendant's conviction. MCLA 769.26; MSA 28.1096.

However, since disposition of defendant's next assignment of error requires reversal, we suggest that upon retrial, a repetition of this error be avoided.

### III.

Defendant's final contention is that the trial court erred by ruling that either counsel could inquire into defendant's prior felony convictions and into the total number of years the defendant had spent in prison. Defense counsel objected to this ruling.

Despite this ruling, the defendant decided to take the stand. Defense counsel then asked the defendant if he had three felony convictions and whether he had spent 17 years in prison. The defendant replied in the affirmative.

The use of prior felony convictions for impeach-ment is a matter within the discretion of the trial judge. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In the instant case, the trial judge did

exercise his discretion. Therefore we find no error as to this point.

We find however, that the allowance of testimony as to the number of years spent in prison is error. While the time in prison was not specifically related to or broken down by so much per felony conviction, the jury could have inferred that the crimes were very serious in nature, or the sentences for some reason particularly harsh.

One of the most recent decisions of this area of the law is to be found in *People v Rappuhn,* 390 Mich 266, 272–273; 212 NW2d 205 (1973). In that case the Michigan Supreme Court held that it was error to allow the introduction into evidence of the length of defendant's prior sentences for purposes of impeachment. In doing so, the Supreme Court quoted with approval from *People v Nelson White,* 26 Mich App 35, 39–40; 181 NW2d 803 (1970):

"It is the prior conduct undertaken by the accused, and not the ensuing punishment, which is relevant. Moreover, sentences for the same offense often vary from tribunal to tribunal and from judge to judge.

"We choose not to speculate whether, and to what extent, the testimony of a maximum ten-year sentence may have influenced the jury and denied the defendant the constitutional guarantee of a fair and impartial trial. The introduction of the length of defendant's prior sentence was reversible error. We cannot say that it did not inure to the prejudice of the defendant. MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096). The statute permitting evidence of prior convictions should be strictly construed."

The fact that the detrimental information was brought out by the defense attorney does not constitute a waiver because he had preserved the issue by objecting to the court's prior ruling. If there had been no prior ruling and no objection

thereto, we would affirm. But defense counsel's strategy in eliciting the adverse information was proper trial strategy under the circumstances.

Reversed.

McGregor, P. J., concurred.

D. E. Holbrook, Jr., J. *(concurring in part, dissenting in part).* I concur in all of parts I and II of Judge Kelly's opinion for the Court. I also concur in so much of part III of Judge Kelly's opinion as holds that there was no abuse of the trial court's discretion in permitting the prosecutor to impeach the defendant with his prior convictions. I must dissent, however, from the majority's holding in part III that reversible error occurred when defense counsel inquired of the defendant on direct examination as to the length of time that he had spent in prison.

The rule that a defendant may not be impeached by reference to the length of his prior sentences is a sound rule. The amount of time that a defendant has spent in prison has little, if any, nexus to his ability or desire to tell the truth on the witness stand. *People v Rappuhn,* 390 Mich 266, 272–274; 212 NW2d 205 (1973), *People v Nelson White,* 26 Mich App 35, 39–40; 181 NW2d 803 (1970). Even the dissenters in *People v Rappuhn* agreed that it was a fair rule, they only disputed its applicability in the case. *People v Rappuhn, supra,* at 275 (T. E. Brennan, J., dissenting). The rule is specifically designed to prevent the prosecutor from using the defendant's prior sentences to impeach him on cross-examination. It is not addressed to the situation where defense counsel questions the defendant on direct examination about his prior sentences. *People v Rappuhn, supra,* at 275, *accord, People v Bledsoe,*

46 Mich App 558, 560; 208 NW2d 545 (1973), *People v Ungurean,* 35 Mich App 143, 144–145; 192 NW2d 342 (1971), *People v Nelson White, supra,* at 39.

I agree with the majority that the trial court's ruling that it would permit testimony concerning the defendant's total prior sentences was clearly erroneous. However, until defendant's prior sentences were in fact revealed to the jury I fail to see where the error was prejudicial. In my opinion defense counsel waived his objection to the trial court's ruling by questioning the defendant about his prior sentences. *Cf. People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969).

While I recognize the dilemma the trial court's erroneous ruling created for defense counsel, defendant's trial commenced more than five months after the Supreme Court's decision in *People v Rappuhn.* This Court should not presume that an assistant prosecutor trying a case would deliberately ask an improper and prejudicial question. See Rule 17.3, State Bar of Michigan, Attorney's Oath. I find no reversible error.

I would affirm the conviction.