PEOPLE v LOWE

1. WITNESSES—CRIMINAL LAW—REBUTTAL TESTIMONY.

Testimony of a complaining witness that a defendant's mother had visited him after a robbery for which the defendant was on trial to explain that the defendant had not participated in the robbery and the relevant times involved in the visit could tend to refute evidence relevant and material to the defense theory and as such was proper rebuttal testimony.

2. CRIMINAL LAW—EVIDENCE—HEARSAY—IMPEACHMENT—EVIDENCE— COLLATERAL MATTERS—REBUTTAL EVIDENCE.

The use of hearsay testimony regarding a collateral matter in an effort to impeach a defendant's testimony exceeds the scope of legitimate rebuttal.

3. CRIMINAL LAW—EVIDENCE—COLLATERAL MATTERS—ADMISSIBILITY OF EVIDENCE.

A defendant in a robbery trial was not bound to meet the collateral matter of whether or not his mother offered a sum of money to the robbery victim and such evidence was erroneously admitted in evidence where the defendant was not present during the conversation between his mother and the victim and where there is nothing to indicate that the defendant had any knowledge of the conversation or was in any way responsible for it.

4. EVIDENCE—ADMISSION—CASE IN CHIEF.

Testimony that constitutes an admission properly belongs in the case in chief.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 440.
  81 Am Jur 2d, Witnesses § 657.
[2] 29 Am Jur 2d, Evidence § 500.
  81 Am Jur 2d, Witnesses § 596 *et seq.*
[3] 29 Am Jur 2d, Evidence § 493 *et seq.*
[4, 5] 29 Am Jur 2d, Evidence § 597 *et seq.*
[6] 29 Am Jur 2d, Evidence § 661.

5. Criminal Law—Evidence—Adoptive Admissions—Unambiguous Assent.

An adopted admission is admissible in evidence where it clearly appears that a defendant understood and unambiguously assented to the statements made.

6. Criminal Law—Evidence—Hearsay—Exceptions—Adoptive Admissions.

Testimony that an accused adopted statements of another person as his own admissions may be allowed in as evidence under the adoptive admissions exception to the hearsay rule if it clearly appears that the accused understood and unambiguously assented to those statements; the question of fact whether the accused's conduct manifested his assent to the statement of the other person is a preliminary question for the judge.

Appeal from Recorders Court of Detroit, Elvin L. Davenport, J. Submitted June 9, 1976, at Detroit. (Docket No. 25144.) Decided September 27, 1976.

Phillip Lowe was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Thomas A. Ziolkowski,* Assistant Prosecuting Attorney, for the people.

*Doherty & Thomas, P. C.,* for defendant.

Before: J. H. Gillis, P. J., and T. M. Burns and W. Van Valkenburg,* JJ.

J. H. Gillis, P. J. Defendant was tried by a jury and convicted of armed robbery. MCLA 750.529; MSA 28.797. He was sentenced to a prison term of 5 to 10 years and appeals.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The defense theory was based upon mere presence at the scene of the robbery. Defendant testified that he and two acquaintances, James McGill and Adrian Brooks, entered the Fairlane Market. Adrian Brooks purchased a package of cigarettes. When the clerk opened the cash register, Adrian produced a pistol and proceeded, with the assistance of James McGill, to take money from the cash register. Defendant stated that he had no prior knowledge of or intent to commit the robbery. He further testified that when the pistol was produced he "froze" momentarily and then ran out of the store.

During cross-examination the prosecutor asked the defendant if he ever tried to explain his theory of noninvolvement to the store owner, Mr. Wilson.[1] Defendant responded: "No, I didn't go back, but my mother did." On re-direct examination defense counsel questioned the defendant as to the purpose of his mother's visit. Defendant replied: "To try to get an understanding with him [presumably, Mr. Wilson], to tell him that I didn't have anything to do with it." Defendant also stated that his mother went to the store about one week after the robbery occurred. Finally, on re-cross-examination the following exchange took place between the prosecutor and the defendant:

"*Q.* I see, as a matter of fact, isn't it true that this understanding that your mother tried to reach with Mr. Wilson was that she offered him the $15.00 which represented your share of the proceeds of the robbery for restitution and that he refused it, $15.00, that was your share of the robbery, that she offered back?
"*A.* No.

---

[1] The crime was committed on October 24, 1974. Defendant was not arrested until December 17, 1974. The trial occurred on May 6 and 7, 1975.

"*Q.* That he didn't want?
"*A.* No.
"*Q.* Isn't that the way it really was?
"*A.* No."

Thereafter, the prosecutor requested that he be allowed to put Mr. Wilson back on the stand to rebut the defendant's denial that his mother made such an offer of restitution. The defense counsel objected vigorously, arguing that any testimony by Mr. Wilson concerning the mother would be inadmissible hearsay relating to collateral matters. After lengthy arguments by both attorneys, the trial judge allowed the recall of Mr. Wilson.

The prosecutor proceeded to elicit from Mr. Wilson that the defendant's mother did indeed visit him. However, Mr. Wilson stated the time of the visit was approximately one week before trial and not a week after the robbery. Mr. Wilson then testified as to the content of his conversation with the mother. Finally, the prosecutor asked this witness whether he had been offered any money. Mr. Wilson replied:

"Oh, yes, she [defendant's mother] did say, 'He only got $15.00 out of the situation, and he didn't have anything to do with it. They gave it to him and he would like to return the money.' So I told her that I couldn't receive any money like that and I wish she wouldn't come by talking like that because it just makes matters worse."

Defendant argues that this testimony constitutes improper impeachment of the defendant on a collateral matter. We agree.

In an attempt to buttress his argument that he never formulated the necessary intent to participate in the robbery, defendant stated that he sent

his mother back to the store to explain that he had nothing to do with the robbery. At this point we think it was proper to allow Mr. Wilson to testify in rebuttal as to whether the mother did visit and the pertinent times involved. Such testimony could tend to refute evidence relevant and material to the defense theory. See *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), *People v Atkins,* 58 Mich App 503; 228 NW2d 435 (1975). However, in the instant case the prosecutor exceeded the scope of legitimate rebuttal by eliciting hearsay testimony in an attempt to impeach the defendant on a collateral matter. *People v Culver,* 280 Mich 223; 273 NW 455 (1937), *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933), *People v Drew,* 67 Mich App 295; 240 NW2d 776 (1976).

*People v Culver, supra,* dealt with the improper impeachment of a witness during a rape trial. The prosecutor asked the defendant's wife whether her brother-in-law, in her presence, offered the prosecutrix's mother $100 to get the prosecutrix to change her story. The witness responded in the negative, and the prosecutor subsequently elicited testimony from the prosecutrix's mother indicating such an offer was in fact made in the presence of the prior witness. The Supreme Court reversed the conviction upon the following analysis:

"The testimony unquestionably prejudiced the jury against defendant; it raised a collateral issue which he was not bound to meet. A witness may not be impeached on a collateral matter. *People v Root,* 231 Mich 239 [203 NW 872 (1925)], *People v Dellabonda,* 265 Mich 486 [251 NW 594 (1933)].

"The testimony was highly prejudicial to defendant, particularly in such a case where the credibility of

witnesses is so vital to the issue and where the jury might infer that defendant was responsible for the alleged proffer of a bribe." 280 Mich at 226; 273 NW at 457.

Similarly, in the case at bar whether or not the defendant's mother offered Mr. Wilson a sum of money is a collateral[2] matter which the defendant was not bound to meet. Defendant was not present during the conversation between his mother and Mr. Wilson. Further, there is really nothing to indicate that the defendant had any knowledge of the contents of that conversation or was in any way responsible for it.

We perceive the real thrust of the conversation between defendant's mother and Mr. Wilson to be that of an admission[3] which the prosecutor has related to the jury through Mr. Wilson. As an admission this testimony would properly belong in the case in chief. *People v Bennett, supra.* How-

---

[2] Facts which can properly be admitted during the case-in-chief are not collateral. *See* McCormick, Evidence, § 47, p 100; 3A Wigmore, Evidence (Chadbourn Revision), § 1021, p 1011. The offer of money by a third party (defendant's mother) to a witness (Mr. Wilson) in order to induce that witness to change his story would appear to be inadmissible under *People v Culver,* 280 Mich 223; 273 NW 455 (1937), during the case-in-chief. "The device of eliciting a denial of some statement not properly in the case at the time of denial will not serve to inject an issue." *People v Bennett,* 393 Mich 445, 449; 224 NW2d 840 (1975).

[3] During the argument on the record the prosecutor stated that Mr. Wilson's rebuttal statements should not be binding upon the defendant, but should be admitted to show the basis for the prosecutor's question about the offer of money by the mother to Mr. Wilson. The prosecutor also mentions an agency theory, *i.e.,* the mother acted as an agent of the defendant by tendering the proceeds of the crime to Mr. Wilson. Finally, the people's brief states that Mr. Wilson's final testimony falls within the adoptive admission exception to the hearsay rule. We also note that the trial court gave a limiting instruction stating that Mr. Wilson's testimony was not binding upon the defendant. It was not made clear to the jury, however, for exactly what purpose they were to consider the testimony. It is difficult for us to consider the testimony as anything other than an attempt to get a purportedly adopted admission before the jury.

ever, we do not think that the subject testimony is admissible through Mr. Wilson, notwithstanding the people's argument that Mr. Wilson's testimony on rebuttal is admissible under an adopted admission theory. In effect the people argue on appeal that the defendant adopted, as an admission, the statement made by his mother that $15 was defendant's share of the robbery proceeds.

This theory is untenable. Adopted admissions are admissible when it clearly appears that the defendant understood and unambiguously assented to the statements made. *Naples v United States,* 120 US App DC 123, 126–127; 344 F2d 508, 511–512 (1964), stated the foundation requirements that must be met before an adoptive admission could be admitted:

"Testimony that an accused adopted statements of another person as his own admissions may be let in under this exception if it clearly appears that the accused understood and unambiguously assented to those statements. * * * '[T]he question of fact whether the party's conduct manifested his assent to the statement of the other person is a preliminary question for the judge. Unless he so finds, the statement is excluded.' In the present case, the trial court was not requested to consider this question and it did not." (Footnote omitted.)

See also, *United States v Coppola,* 526 F2d 764, 769 (CA 10, 1975).

We conclude that the rebuttal testimony of Mr. Wilson exceeded the scope of permissible rebuttal and in addition constitutes inadmissible hearsay which was highly prejudicial to the defendant.

Reversed and remanded for a new trial.