PEOPLE v SPALLA

Docket No. 31488. Submitted March 13, 1978, at Lansing.—Decided
    June 5, 1978.

  Frederick T. Spalla was charged in an information with murder
    and convicted in Oakland Circuit Court, Robert L. Templin, J.,
    of first-degree murder. At trial the prosecutor called the wife of
    the deceased who denied making any statements to a friend to
    the effect that she would share the life insurance proceeds with
    whoever would kill the deceased. The prosecutor then called
    the friend to impeach the deceased's wife by testifying to the
    statements. Defendant appeals raising several issues. *Held:*

    1. Defects in a complaint and warrant are waived by a
    defendant entering a plea at arraignment without raising
    objections thereto.

    2. An information charging murder without specifying the
    degree is sufficient to sustain a conviction of first-degree mur-
    der, even where the defendant at preliminary examination
    requests specification of the charge and his request is denied.

    3. The elements of first-degree murder, including *corpus
    delicti,* deliberation and premeditation may be proven by cir-
    cumstantial evidence.

    4. It is improper for a prosecutor to impeach the credibility of
    a witness whom he calls but is not obligated to call where the
    testimony given by the witness is anticipated.

    5. In reviewing inadmissible evidence introduced at trial the
    reviewing court must decide whether the evidence was of such
    a nature that the "human limitations" of the jury could reason-
    ably be anticipated to preclude them from adhering to the trial
    court's limiting instructions concerning it.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest § 117.
[2] 40 Am Jur 2d, Homicide §§ 205, 209, 212.
[3] 40 Am Jur 2d, Homicide §§ 433, 439.
[4] 81 Am Jur 2d, Witnesses § 619.
[5] 5 Am Jur 2d, Appeal and Error § 890.
[6] 5 Am Jur 2d, Appeal and Error §§ 778, 779, 798, 803, 807.

M. J. KELLY, J., dissented. He would hold that introduction of statements of the wife of the deceased to a friend to the effect that she would share the life insurance proceeds with whoever killed her husband, for the purpose of impeaching the credibility of the wife, was collateral to the issue of defendant's guilt or innocence and highly prejudicial. He would reverse.

OPINION OF THE COURT

1. CRIMINAL LAW—COMPLAINTS—WARRANTS—WAIVER.

Defects in a complaint and arrest warrant are waived where a defendant enters a plea at arraignment on the information without making objections thereto.

2. HOMICIDE—MURDER—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—INFORMATIONS—PURPOSE OF INFORMATION—SUFFICIENCY OF INFORMATION.

The purpose of an information is to advise the accused of the offense with which he is charged; an information charging a defendant with murder, without specifying the degree or circumstances, is sufficient to advise him to prepare to defend himself against both first- and second-degree murder, even where the defendant requests a particularization as to degree.

3. CRIMINAL LAW—FIRST-DEGREE MURDER—PROOF OF ELEMENTS—CIRCUMSTANTIAL EVIDENCE.

The elements of first-degree murder, including *corpus delicti,* deliberation and premeditation, may be properly proven by circumstantial evidence.

4. WITNESSES—CRIMINAL LAW—PROSECUTION WITNESSES—IMPEACHMENT.

It is improper for the prosecutor to impeach the credibility of a witness whom he is not obligated to call, where the testimony of the witness is anticipated.

5. APPEAL AND ERROR—EVIDENCE—HUMAN LIMITATIONS OF JURY.

The issue on review of inadmissible evidence admitted at trial is whether the evidence is of such a nature that the "human limitations" of the jury could reasonably be anticipated to preclude them from adhering to a limiting instruction of the trial court.

DISSENT BY M. J. KELLY, J.

6. APPEAL AND ERROR—EVIDENCE—MURDER—MOTIVE—IMPEACHMENT EVIDENCE.

*Admission in a murder trial of testimony otherwise inadmissible*

*which provides the only evidence of motive and which would require heroic effort for the jury to follow the trial court's limiting instruction cautioning that the testimony was only to function as impeachment testimony and not as substantive evidence is error requiring reversal and cannot be held to be harmless error.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Wesley J. Roberts (Robert Pagano,* of counsel), for defendant on appeal.

Before: BASHARA, P. J., and M. J. KELLY and ALLEN, JJ.

BASHARA, P. J. Defendant appeals from a jury verdict convicting him of first-degree murder.[1] The information alleged an open charge of murder, but cited the first-degree murder statute.[2]

It is claimed by defendant that there was insufficient evidence presented to support the issuance of a complaint and warrant for his arrest. When arraigned on the information, defendant entered a plea without raising this objection. Consequently, if there was any defect in the complaint and warrant, it was thereby waived. *People v Licavoli,* 256 Mich 229, 231; 239 NW 292 (1931), *People v Dowd,* 44 Mich 488; 7 NW 71 (1880), *People v Bohm,* 49 Mich App 244, 250; 212 NW2d 61 (1973), *lv den,* 397 Mich 877 (1976).

A pre-trial motion to quash the information was made by defendant on the basis that insufficient

[1] MCL 750.316; MSA 28.548.
[2] *Id.*

evidence was presented at the preliminary examination on the element of premeditation and deliberation to permit a trial on the charge of first-degree murder. Defendant contends that denial of that motion was erroneous. In conjunction with this claim, defendant further argues that it was error for the magistrate to submit defendant for trial on a charge of murder without specifying the degree.

As to the latter contention, it is important to recognize that the purpose of an information is to advise the accused of the offense with which he is charged. *People v Rios,* 386 Mich 172, 175; 191 NW2d 297 (1971), *People v Gould,* 237 Mich 156, 164; 211 NW 346 (1926). In *People v Treichel,* 229 Mich 303; 200 NW 950 (1924), the Court held that an information charging the defendant with murder, but not specifying the degree or circumstances, was a sufficient basis for finding him guilty of either first- or second-degree murder. *Id.* at 307–308. Accordingly, the information in the instant case was sufficient to advise the defendant that he must prepare to defend himself against both first- and second-degree murder.

This conclusion also finds support from the case of *Sneed v People,* 38 Mich 248 (1878), where it was held that an indictment charging the defendant with "murder" was sufficient to encompass first-degree murder.[3] *Id.* at 251–252. We, therefore,

---

[3] The Court's decision in *Sneed* was predicated upon the provisions of 2 CL § 7916, which is now MCL 767.71; MSA 28.1011, and states:

"In all indictments for murder and manslaughter it shall not be necessary to set forth the manner in which nor the means by which the death of the deceased was caused; but it shall be sufficient in any indictment for murder to charge that the defendant did murder the deceased; and it shall be sufficient in manslaughter to charge that the defendant did kill the deceased."

This provision is made applicable to informations by MCL 767.2; MSA 28.942.

conclude that the magistrate was not required to specify the degree of murder charged, even though a request for such particularization was made by the defendant. When the charge encompasses first-degree murder the ultimate finding as to degree is for the jury. See MCL 750.318; MSA 28.550; *cf. People v Carter,* 395 Mich 434, 438; 236 NW2d 500 (1975).

We also find that the evidence presented at the preliminary examination as to premeditation and deliberation was sufficient to warrant a denial of defendant's motion to quash the information. Although the evidence presented by the prosecution was entirely circumstantial, that alone would not preclude the jury from finding the element of premeditation and deliberation. *People v Hoffmeister,* 394 Mich 155, 158–159; 229 NW2d 305 (1975). The defendant's state of mind may be inferred from his conduct within the context of the circumstances shown by the evidence. *Id.*

In the instant case, testimony was presented which, if believed by the jury, would establish that the defendant and decedent left the decedent's residence together in a bronze compact automobile, borrowed by defendant from his friend. Defendant stated, in the presence of one witness, that he and the decedent were going to an area near Lake Orion. Approximately 20 to 30 minutes thereafter, another witness, while on his property in a secluded area near Lake Orion, heard three gun shots. He then observed a bronze compact automobile drive out from a nearby field and speed away from the area. When the witness went over to the area from which he observed it drive away, he found the decedent's body.

Crime laboratory investigators obtained tire tread impressions and measurements from the

area where decedent's body was found. Those impressions and measurements matched the tread style and wheel base of the car defendant borrowed from his friend.

Additional circumstantial evidence was presented as to the distances allegedly traveled by defendant, the time required to traverse those distances, and the sequence of events before and after the occasion of decedent's death. It is our conclusion that this array of evidence was sufficient to allow a trier of fact to infer that the defendant planned the excursion to a secluded area with the intent to kill the decedent. Therefore, the court's denial of defendant's motion to quash the information was proper. Proof of the *corpus delicti* and defendant's guilt may rest upon circumstantial evidence. *People v Barron,* 381 Mich 421, 426; 163 NW2d 219 (1968), *People v Hawksley,* 82 Mich 71, 73; 45 NW 1123 (1890).

At trial the prosecutor, in his opening statement, indicated that he would show the motive for the murder was to collect the proceeds of the insurance on decedent's life. As part of the motive evidence, the prosecutor called the decedent's wife as a witness. He attempted to elicit testimony showing her close relationship with defendant. The prosecutor then asked whether she had previously stated to a named friend that she would share the life insurance proceeds from decedent's death with whomever she could find to kill him. She denied making any statement of that nature.

One of the following prosecution witnesses was the friend of the decedent's wife named in the latter inquiry. She testified, over the defendant's objection, that approximately 9 to 12 months prior to his death, decedent's wife had made the claimed statement. The trial court instructed the jury that

they were to consider such testimony only for the purpose of assessing the credibility of decedent's wife. Defendant maintains that in permitting the prosecutor to impeach the credibility of his own witness, the trial court committed reversible error.

Our state's jurisprudence continues to adhere to the archaic common law prohibition against a party's impeachment of his own witness's credibility. *People v White*, 401 Mich 482, 508; 257 NW2d 912 (1977). Notwithstanding the resounding criticism of the rule[4] and its abrogation in numerous jurisdictions,[5] it has been codified, along with its exceptions, in our recently adopted rules of evidence.[6] The exceptions are not applicable to the

---

[4] *See, e.g., Chambers v Mississippi*, 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973), *United States v Norman*, 518 F2d 1176 (CA 4 1975), *United States v Freeman*, 302 F2d 347 (CA 2 1962), *Johnson v Baltimore & O R Co*, 208 F2d 633 (CA 3 1953), 1 Morgan, Basic Problems of Evidence, pp 69–71 (1954), 3A Wigmore, Evidence (Chadbourn Rev, 1970), §§ 896–899, pp 658–666. In *Chambers* the United States Supreme Court observed:

"Although the historical origins of the 'voucher' rule are uncertain, it appears to be a remnant of primitive English trial practice in which 'oath-takers' or 'compurgators' were called to stand behind a particular party's position in any controversy. Their assertions were strictly partisan and, quite unlike witnesses in criminal trials today, their role bore little relation to the impartial ascertainment of the facts."

"Whatever validity the 'voucher' rule may have once enjoyed, and apart from whatever usefulness it retains today in the civil trial process, it bears little present relationship to the realities of the criminal process." *Id*. at 296 (footnotes omitted).

Professor Wigmore has referred to the rule as a "primitive notion, resting on no reason whatever, but upon mere tradition, and irrationally forbidding any attempt to question the utterances of one's own witness * * * ". Wigmore, *supra*, § 898.

[5] *See, e.g.*, FR Evid 607, Ill Rev Stat (1967), ch 110, § 60, GL, c 233, § 23 (Mass), § 20-2-4 NM Stat Annot 1953 (2d Repl Vol 4), McKinney's Cons Laws of NY, Book 7B, 4514, CPLR Cal Evid Code, § 785.

[6] MRE 607 provides:

"The credibility of a witness may be attacked by

(1) an opposing party; or

(2) the calling party if

    (A) the calling party is the prosecutor and he is obliged to call the witness,

instant case. Consequently, it was error for the trial court to allow the prosecution to impeach the credibility of its witness.

However, our inquiry cannot cease with that conclusion. We must assess whether that error resulted in undue prejudice to defendant's right to a fair trial, or whether it was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 562–563; 194 NW2d 709 (1972), *People v Smith,* 363 Mich 157, 164; 108 NW2d 751 (1961).

In *People v White, supra,* the impeachment evidence was found to be so prejudicial that the jury could not be relied upon to follow the admonition of the trial court's instruction limiting its use to credibility assessment. *Id.* at 510. The evidence consisted of testimony by a cofelon, given in a previous trial, that he and defendant committed the offense with which the defendant was charged. The Court referred to the supporting case of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), which involved utilization of a codefendant's confession in a joint trial, admitting that he and the petitioner had committed the charged offense.

The *Bruton* decision was premised upon a perceived violation of the defendant's Sixth Amendment right of confrontation. However, the United States Supreme Court also made the following observation:

" 'Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury

(B) in a civil case, the witness is an opposite party or employee or agent of an opposite party, or

(C) the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case."

can reasonably be expected to follow them, the jury system makes little sense.' We agree that there are many circumstances in which this reliance is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial, but not a perfect one.'

"It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v Denno, supra [378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964)]*, there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135 (citations omitted).

Accordingly, our inquiry is, essentially, whether the inadmissible evidence in the case under review is of a nature that the "human limitations" of the jury could reasonably be anticipated to preclude them from adhering to the limiting instruction of the trial court. That instruction enjoined them not to consider the testimony as substantive evidence, but only that the decedent's wife made a prior inconsistent statement. We conclude that introduction of the impeachment testimony, though error, was not reversible error.

The impeachment testimony pertained only to the motive of decedent's wife for hastening her husband's demise. Yet the prosecutor was unable to present evidence even remotely suggesting that the decedent's wife enlisted the defendant's service in achieving that objective. Further, the trial court's instruction that the testimony was not to be considered for the truth of what was said, in conjunction with the defense counsel's skillful

cross-examination eliciting the witness's disbelief in the statement, significantly militates against any adverse effect upon the jury.

The foregoing factors, considered with the otherwise commendably and adroitly presented case by the prosecutor, leads us to conclude that any error was harmless beyond a reasonable doubt.

Defendant's contentions with respect to the jury's verdict are unavailing, being resolved by *People v Rabin,* 317 Mich 654, 668; 27 NW2d 126 (1947), *cert den,* 332 US 759; 68 S Ct 60; 92 L Ed 345 (1947). Similarly, the remaining claims of error are without merit.

Affirmed.

ALLEN, J., concurred.

M. J. KELLY, J. *(dissenting).* I cannot agree with the majority that the error committed by the trial court in allowing the prosecutor to impeach the credibility of his own witness by a rebuttal witness was harmless beyond a reasonable doubt.

The purported statement by the wife of the victim to a friend that she would share the life insurance proceeds from the victim's death with whomever she could find to kill him was collateral to the issue of defendant's guilt and extremely prejudicial to the defendant. The prosecutor called the wife as a witness, but she denied making the statement. Subsequently, the prosecutor called the friend of the wife, and over the defendant's objection, she testified that approximately 9 to 12 months prior to the victim's death, his wife had made the claimed statement to her. The trial court erred in allowing this testimony. The prosecutor cannot call a witness to impeach another witness on a collateral matter. If there was a plan there

was absolutely no evidence connecting defendant with the wife's plan. *People v Culver,* 280 Mich 223, 226; 273 NW 455 (1937). See *People v Lowe,* 71 Mich App 340; 248 NW2d 263 (1976), *People v Drew,* 67 Mich App 295; 240 NW2d 776, *lv den,* 397 Mich 807 (1976). *Cf. People v Sherman Hall,* 77 Mich App 456; 258 NW2d 517 (1977).

For the following reasons I find that the error requires reversal:

The jury was cautioned that the testimony relating to the statement was only to function as impeachment testimony regarding the credibility of the wife, and not as substantive evidence. The statement, nevertheless, birthed a motive for the killing. It would require heroic effort for the jury to follow the trial court's limiting instructions about impeachment rather than truthfulness of the testimony. I am not convinced no error occurred.

The record indicates that the prosecution was unable to present any evidence suggesting that the wife employed defendant to carry out her plan. This was not necessary, it would be implicit. I would hold that the prejudicial aspect of the collateral statement was not clearly ignored by the jury, and the defendant was very likely prejudiced. The motive was provided by the statement, and defendant was the only one charged with the crime. See *People v Ellerhorst,* 12 Mich App 661, 670–671; 163 NW2d 465 (1968), also McCormick, Evidence (2d ed), § 36, pp 70–72.

I would reverse for a new trial.