PEOPLE v SWANN

1. CRIMINAL LAW—EVIDENCE—QUESTION FOR JURY.

In a jury conviction of robbery unarmed where insufficiency of evidence to support a verdict of guilty beyond a reasonable doubt is claimed and basically the case was one of the word of the defendant against that of the complainant and the testimony of police officers, conflicts or inconsistencies which existed were properly left to the jury under appropriate instructions and conviction was proper.

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—GUILT BEYOND A REASONABLE DOUBT.

Statement by the prosecutor in his final argument to the jury indicating that their decision would turn essentially upon the credibility of the witnesses is not an exhortation to the jury to abandon their duty to decide whether the defendant was proven guilty beyond a reasonable doubt, and where the trial court gives careful instructions with regard to reasonable doubt, any alleged error is cured.

3. WITNESSES—UNRESPONSIVE ANSWER—CORRECTION.

Error cannot be predicated upon the fact that a witness gives an improper or irrelevant answer where the question was a proper one and neither the court nor counsel was at fault; it will be presumed that the judge will apply the proper corrective measures in his instructions if requested to do so.

4. CRIMINAL LAW—RES GESTAE WITNESSES—FAILURE TO INDORSE.

A person who had no knowledge of the circumstances of the crime or of defendant's alleged participation therein, but whose testimony, if called, would have been limited to the question of whether or not she knew the defendant was not a res gestae witness, and it was not error to rule that she was not.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial § 677.
[3] 58 Am Jur, Witnesses § 575.
[4, 5] 29 Am Jur 2d, Evidence §§ 722–724.

5. CRIMINAL LAW—EVIDENCE—HEARSAY.

It was error to permit an arresting officer to repeat the out-of-court statement of a party not called as a witness to the effect that she did not know the defendant, where the party making the statement was not a participant in, victim of, or spectator at the alleged robbery, and had not made the statement in nervous excitement, and the statement did not relate to the circumstances of the robbery; but while the statement was not admissible under the res gestae exception to the hearsay rule, the error was cured by defendant's subsequent admission that the statement was made.

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 November 14, 1972, at Detroit. (Docket No. 12286.) Decided January 16, 1973.

George A. Swann was convicted of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael R. Mueller,* Assistant Prosecuting Attorney, for the people.

*Roy D. Delaney,* for defendant on appeal.

Before: LEVIN, P. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. Defendant George Avery Swann, also known as Michael Jackson, was charged with the crime of armed robbery, MCLA 750.529; MSA 28.797, and found guilty by a jury on the lesser included offense of robbery unarmed. MCLA 750.530; MSA 28.798. He was sentenced to not less

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

than 2 nor more than 15 years imprisonment. He
appeals of right.

Defendant first complains that the evidence was
not sufficient as a matter of law to support a
verdict of guilty beyond a reasonable doubt. We do
not agree.

James Morgan was the complaining witness in
this case. He testified that, while on his way to the
grocery store, he was robbed by the defendant.
Morgan stated that the defendant pushed him
between two houses, removed Morgan's wrist
watch, and also took $3 in cash and a pack of
cigarettes. During the course of the robbery, the
defendant held what was purported to be a knife
to Morgan's throat. Then Morgan courageously, if
somewhat imprudently, chased his assailant ap-
proximately one block until he discovered the
defendant already in police custody. He never lost
sight of his assailant during the chase.

Two Detroit patrol-car officers related how they
apprehended defendant in the vicinity of where
the robbery complained of allegedly occurred. One
patrolman stated he observed a man crouching in
a doorway giving the appearance of trying to gain
entrance to a house. He stated that his partner
approached the crouchee on foot, and that as the
defendant was brought back to the squad car the
complainant, Morgan, ran up and shouted to hold
the defendant because he (the defendant) had rob-
bed Morgan. The other officer's testimony basically
corroborated what the first officer stated. He origi-
nally observed defendant running down the street.
He further related that as he alighted from the
police vehicle and approached defendant he no-
ticed two things, *i.e.,* the defendant's heart was
beating rapidly and defendant sought to gain entry
to an adjacent house. Lest he mistakingly attrib-

ute wrongdoing to an innocent party, the officer knocked on the door of the involved home. He asked the woman who identified herself as the "lady of the house" whether she could identify the defendant. She said "no". The mere suspicion he might have interrupted a breaking and entering did not, in the officer's mind, justify an arrest. So he resolved to question the defendant at some length in the squad car. However, Morgan entered stage right and quickly related the fact of his misfortune to the officers. A search of defendant's person revealed the presence of three articles which bear on the case, *i.e.,* a watch, three $1 bills, and a pack of cigarettes. Morgan positively identified the watch as being the one defendant had taken a short while before.

The defendant denied he had robbed the complainant and further stated that just prior to his apprehension by the officers he had been gambling with complainant Morgan and a third man, identified only as Lavee, at a nearby apartment building, and had taken complainant's wristwatch in payment of a bet lost by Morgan.

Basically this case was one of the word of the defendant against that of the complainant and the testimony of the police officers. The conflicts or inconsistencies which existed were properly left to the jury under appropriate instructions.

Next, defendant argues the following statement made by the prosecutor in his final argument to the jury constituted reversible error:

"Now based on these facts, ladies and gentlemen, I submit to you that you have one decision to make, whether or not you are going to believe Mr. Morgan and the two patrolmen or the defendant. You have to accept all of one side and none of the other, all of the other side and none of the first."

We read this to mean no more than the prosecutor indicated to the jury that their decision would turn essentially upon the credibility of the witnesses. We cannot construe this statement as an exhortation to the jury to abandon their duty to decide whether the defendant was proven guilty beyond a reasonable doubt. In any event, it is evident from a reading of the trial court's careful instructions with regard to reasonable doubt that any alleged error was cured.

As his third issue on appeal, defendant vigorously objects to this colloquy between the assistant prosecutor and one of the arresting officers:

"*Q.* Did you confiscate any property from this man, the defendant?

"*A.* Yes, we did.

"*Q.* I will show you people's proposed exhibit number 1, which contains two articles and ask you if you can identify these exhibits?

"*A.* This would be the watch.

"*Q.* This is the watch you confiscated?

"*A.* Yes, Lord Nelson.

"*Q.* What else was confiscated?

"*A.* Three $1 bills, my initials and my partner's initials on it, and cigarettes, Pall Mall cigarettes.

"*Q.* Do you recall where on the defendant's person the articles were taken from?

"*A.* Be is, his left front pants pocket I found what we believed to be *suspected narcotics,* one wristwatch, the three $1.00 bills and a package of Pall Mall cigarettes. [Emphasis supplied.]

"*Q.* You're referring to these three items?

"*A.* Yes.

"*Q.* You found them in the left front pocket?

"*A.* Yes.

"*Q.* And did you convey—

"*Mr. Maher:* I will object to that suspected narcotics, I don't think—

"*The Court:* I don't think that the prosecutor asked,

but the witness volunteered it. I will sustain your objection and ask the jury to disregard that portion of the answer."

In 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 600, p 778, it states with respect to unresponsive, irrelevant, and spontaneous answers volunteered by witnesses:

"Error cannot be predicated upon the fact that a witness gives an improper or irrelevant answer where the question was a proper one and neither the court nor counsel was at fault. Improper testimony offered by a witness and promptly struck out by the court on objection is not reversible error. * * * A witness cannot put error into a case by an unauthorized remark, neither called out by a question nor sanctioned by the judge; and if what he says or does improperly is likely to do much mischief, it is presumed that the judge will apply the proper corrective measures in his instructions if requested to do so." See also *People v Joseph Barbara Jr,* 23 Mich App 540 (1970); *People v Gibson,* 25 Mich App 622 (1970); *People v Fuston Thomas,* 36 Mich App 23 (1971); *People v Podsiad,* 295 Mich 541 (1940).

Next, defendant claims the trial court erred by not requiring the people to endorse as a res gestae witness the "lady of the house" outside of which the defendant was apprehended.

It is evident from a reading of the facts in the instant case that the "lady of the house" had no knowledge of the circumstances of the crime or of defendant's alleged participation therein. Her testimony, had she been called at trial, would have been limited to the question of whether or not she knew the defendant. It follows the trial court did not err in ruling that she was not a res gestae witness. See *People v Kayne,* 268 Mich 186 (1934); *People v Jones,* 38 Mich App 512 (1972).

Finally, defendant claims that the trial court

erred in permitting one of the arresting officers to repeat the out-of-court statement of the "lády of the house" to the effect she did not know the defendant. This statement, able defense counsel argues, was clearly not admissible under the res gestae exception to the hearsay rule.

We agree. A search of the record discloses she was not a participant, victim, or a spectator with respect to the alleged robbery.[1] The quoted statement was not made in nervous excitement on the part of the "lady of the house".[2] The statement did not relate to the circumstances of the robbery.[3] Technical error there was, but defendant's subsequent admission that the statement was made cures it if it needs curing at all. See *People v Davis,* 217 Mich 661, 667 (1922).

Of the several issues raised on appeal, none of the alleged errors, taken individually or collectively, would warrant our reversing the verdict below. Perforce, we affirm.

V. J. BRENNAN, J., concurred.

LEVIN, P. J., concurred in result only.

[1] *People v George Baker,* 7 Mich App 7 (1967).

[2] *People v Baker, supra.*

[3] *Rice v Jackson,* 1 Mich App 105 (1965).