## PEOPLE v ALMOND

1. CRIMINAL LAW—EVIDENCE—PRIOR CRIMINAL RECORDS—WITNESSES
   —UNRESPONSIVE REMARKS.

   Unresponsive testimony of a complaining witness which implied
   that a defendant's accomplice had a prior criminal record, in a
   trial for armed robbery, kidnapping, and rape, did not deny the
   defendant a fair trial where (1) the testimony was an inadver-
   tent and unanticipated answer to a proper question which was
   stricken from the record, and the jury was instructed to disre-
   gard it, (2) the accomplice took the stand and admitted having
   been convicted of a crime on one prior occasion, and the jury
   was instructed that such testimony could only be used to test
   credibility, and (3) the complaining witness's testimony con-
   cerned the res gestae, a part of the very transaction for which
   defendant and his accomplice were being tried.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—MIRANDA WARNINGS—INI-
   TIAL SILENCE—WAIVER OF RIGHTS.

   A defendant's statement to police was given voluntarily, although
   the defendant had remained silent when he was given his
   *Miranda* warnings at an earlier time, where the defendant was
   again given his *Miranda* warnings before the statement was
   made and he waived his rights thereunder.

3. CRIMINAL LAW—SENTENCING—APPEAL AND ERROR.

   The Court of Appeals may not substitute its judgment for that of
   the trial court as to what constitutes a proper sentence for a
   particular offender where the sentence is within statutory
   limits.

4. CRIMINAL LAW—SENTENCING—CONSTITUTIONAL LAW—EQUAL PRO-
   TECTION—DUE PROCESS.

   A disparity in sentences given to two codefendants does not
   violate the right to due process and equal protection of the law

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 115 *et seq.*
[2] 29 Am Jur 2d, Evidence §§ 555–557.
[3] 21 Am Jur 2d, Criminal Law §§ 533, 572.
[4] 21 Am Jur 2d, Criminal Law §§ 540, 581, 614.

.

where the culpability of the defendants was not the same and the disparity in sentences was not based on an arbitrary classification.

Appeal from Oakland, Richard D. Kuhn, J. Submitted February 11, 1976, at Lansing. (Docket No. 24650.) Decided March 9, 1976.

Leon Almond was convicted of armed robbery, kidnapping and rape. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Paul A. Nida,* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and D. E. HOLBROOK and T. M. BURNS, JJ.

D. E. HOLBROOK, J. Leon Almond, defendant, was charged with armed robbery, MCLA 750.529; MSA 28.797, kidnaping, MCLA 750.349; MSA 28.581, and forcible rape, MCLA 750.520; MSA 28.788. He was tried before a jury and convicted on all three counts on June 21, 1974. On August 6, 1974, defendant was sentenced to concurrent terms of life for the armed robbery conviction and for the forcible rape conviction, and imprisonment for a term of from 40 to 60 years for the kidnaping conviction, with 134 days credit given for time served in jail. Defendant appeals.

Defendant's accomplice, Curtis Thompson, was tried with the defendant, having been charged with armed robbery and kidnaping. The jury was unable to reach a verdict as to Thompson, and the

court declared a mistrial in the Thompson case. Thompson was later permitted to plead guilty to an added count in the information of unarmed robbery, MCLA 750.530; MSA 28.798, and was sentenced to prison for a term of 5 to 15 years.

As its first witness at trial, the people called the complainant, a married lady, to the stand. She testified that upon returning to her vehicle after purchasing some shirts for her husband, at about 2 p.m. March 6, 1974, she was forced by the defendant, who possessed a gun (later determined to be plastic), to sit in the passenger side of the vehicle, while defendant drove her automobile to an isolated area. The codefendant, Thompson, followed the complainant's vehicle in another automobile. Thereafter, the complainant was compelled to abandon her vehicle and enter the automobile driven by the codefendant. The victim was then robbed of her jewelry and money. Not satisfied with this, the men drove to the victim's husband's office. After arriving at the office, defendant dropped the codefendant off, in a claimed attempt to extort additional money from complainant's husband, and left with the complainant. Thereafter, the defendant forcibly raped the complainant on two occasions. Subsequently, the complainant was released. Immediately thereafter, she contacted the police and informed them of the incident.

During the course of her testimony, after positively identifying defendant's accomplice as being the codefendant, Thompson, the complainant, in response to the prosecution's question as to whether she was sure that Thompson was the defendant's accomplice and driver of the other vehicle, stated:

"Yes, because when they were—I had my purse there. When they had the purse in the front and all, and he

had his face—he was talking to Leon, in fact, he said something about he had been sentenced before and he didn't want to have another—".

The codefendant's trial counsel immediately objected to this testimony regarding the codefendant's statement concerning his prior criminal record and moved for a mistrial. A hearing on this motion was held outside of the jury's presence. In support of this motion, codefendant's counsel argued that the complainant's testimony was uncalled for, highly prejudicial and could not be corrected by further testimony. Defendant's trial counsel joined in this motion urging that the statement was equally harmful to the defendant, since defendant was charged with acting in concert with the codefendant. After a short recess, the trial judge indicated that he had studied the applicable law and denied defendant's motion for mistrial, but indicated that he would instruct the jury to disregard the testimony since it was not responsive to the question posed. Immediately thereafter, the jury was returned to the courtroom and the judge informed the jury that it was to disregard this testimony.

Defendant Almond raises three issues on appeal which we consider in proper order.

I.

*Was the defendant denied a fair and impartial trial, as a result of a witness's unresponsive answer implying that the defendant's accomplice had a prior criminal record?*

The objected-to testimony of the complaining witness is quoted verbatim in the facts above stated, and defendant claims this constituted reversible error and denied defendant a fair trial.

We rule that this incident in the trial did not constitute reversible error for the reasons that (1) it was an inadvertent, unanticipated answer to a proper question, which was properly stricken from the record and the jury instructed to disregard the same, *People v Measles,* 59 Mich App 641; 230 NW2d 10 (1975), *People v Histed,* 56 Mich App 630; 224 NW2d 721 (1974), *People v Swann,* 44 Mich App 329; 205 NW2d 281 (1973), *People v Joseph Barbara, Jr,* 23 Mich App 540; 179 NW2d 105 (1970); (2) Thompson took the stand and admitted having been convicted of a crime on one prior occasion, and the trial court instructed the jury properly that such testimony could only be used to test the credibility of the codefendant Thompson; and (3) it was a part of the res gestae, a part of the very transaction upon which defendant and codefendant were being tried.

The defendant's position on this issue must fail.

## II.

*Did the trial court commit reversible error when, after completion of a Walker hearing, it permitted a prior statement by defendant to be admitted into evidence?*

A police officer testified that upon being informed of the crime and given a description and license number of the automobile of the suspected perpetrator of the crime, he communicated this information to other officers. The testimony of these other officers shows that defendant was spotted very shortly thereafter and a high-speed chase followed until defendant was involved in an accident and was arrested when he attempted to flee on foot. Defendant fought the officers and was finally subdued and placed in custody. Officers took the defendant to a hospital for treatment of facial

lacerations. While at the hospital, one Fred Marchina, a Birmingham police officer, gave defendant his *Miranda* warnings, and thereafter defendant waived his rights thereunder and gave his statement, *not a confession.* The trial judge, after the *Walker* hearing which was held outside the hearing of the jury, determined that the statement was voluntary and that defendant had knowingly waived his constitutional rights. Defendant had previously been given his *Miranda* rights on the way to the hospital, but had not been asked any questions or if he wished to waive his rights and the defendant at the time kept his silence. He now claims that his silence at that time constituted a refusal to give a statement which carried over to the later time when he gave a statement at the hospital. He claims the subsequent statement was not voluntary for that reason. The statement to which he objects is as follows:

"*A.* (Officer Marchina) When Mr. Almond agreed to talk to me, I asked him his involvement, if he had been involved in a kidnaping, and he stated that he didn't. I asked him if he had been to Ted's Restaurant and he stated he didn't. I then pointed out the matches that I found in his coat pocket. He said, at that time, that he remembered he had been at that restaurant. I asked him if he had left alone and he told me, no, on his way out the door an elderly woman come up to him. She had asked him for a ride to the bus depot and, 'Being a nice dude,' as he put it, he drove her to the bus depot."

We rule that defendant's position in this regard is untenable, and we cite the recent case of *Michigan v Mosley,* 421 US 928; 96 S Ct 321; 46 L Ed 2d 313 (1975), as authority that the subsequent giving of the *Miranda* rights and waiver of the same permitted the court to admit the defendant's statement.

As to the main part of defendant's claim of

reversible error, *i.e.,* the statement was not voluntary and that he had not knowingly waived his *Miranda* rights, we also must decline to adopt. We rule that after reviewing the entire hearing record, that the statement was given voluntarily and after the defendant was fully aware of the situation and knowingly had waived his *Miranda* rights. *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709, 710 (1972), *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677, 679 (1974).

### III.

*Did the disparity in sentences given to defendant and codefendant in this case result in the defendant being denied his constitutional rights to due process and equal protection of the law?*

The sentences meted out to defendant were within the statutory limits and under such circumstances this Court is not free to substitute its judgment for that of the trial judge as to what constitutes proper sentences for a particular offender. *People v Krum,* 374 Mich 356; 132 NW2d 69 (1965), *People v Connor,* 348 Mich 456; 83 NW2d 315 (1957).

Under similar circumstances this Court has rejected claims of due process and equal protection of the law in the cases of *People v Dupuie,* 52 Mich App 510, 513; 217 NW2d 902, 903 (1974), and *People v Jones,* 19 Mich App 170, 171; 172 NW2d 485, 486 (1969). It is not claimed herein that the disparity in the sentences given to defendant and codefendant was based on an arbitrary classification such as race or religion. We deduce, as no doubt the trial court did, that culpability of the defendant was much greater than that of the codefendant. No error resulted in the sentencing process.

Affirmed.